740 N.E.2d 60 (2000)
317 Ill. App.3d 461
251 Ill.Dec. 230
In re D.F., T.K., and E.K., Minors (The People of the State of Illinois, Petitioner-Appellee,
v.
Christopher Fleming, Respondent-Appellant).
No. 4-00-0479.
Appellate Court of Illinois, Fourth District.
November 22, 2000.
*61 Paul G. Lawrence (Court-appointed), Lawrence, Moore & Ogar, Bloomington, for Christopher Fleming.
Charles G. Reynard, State's Attorney, Bloomington, Norbert J. Goetten, Director, Robert J. Biderman, Deputy Director, Linda Susan McClain, Staff Attorney, State's Attorneys Appellate Prosecutor, Springfield, for the People.
Justice STEIGMANN delivered the opinion of the court:
In December 1999, the State filed a petition to terminate the parental rights of respondent, Christopher Fleming, regarding his minor child, D.F. (born February 13, 1997). (The State also filed a motion to terminate the parental rights of respondent's wife, Nancy Fleming, as to D.F. and two of her children from a prior marriage, T.K. and E.K.) Following a May 2000 hearing on the State's petition, the trial court found respondent unfit. The court later determined that it would be in D.F.'s best interest to terminate respondent's parental rights.
Respondent appeals, arguing that (1) the trial court's finding of parental unfitness was against the manifest weight of the evidence, and (2) the court's decision to terminate his parental rights was not in D.F.'s best interest. We vacate and remand with directions.

I. BACKGROUND
In December 1997, the State filed a petition for the adjudication of wardship of D.F., T.K., and E.K. In paragraph 5(A) of its petition, the State alleged that the minors were neglected, pursuant to section 2-3(1)(a) of the Juvenile Court Act of 1987, in that they were not receiving the proper or necessary support or remedial care necessary for their well-being (705 ILCS 405/2-3(1)(a) (West 1996)). Specifically, the State alleged the following:
"[T]he family residence was found by the Illinois Department of Children and Family Services [(DCFS)] [i]nvestigator to be filthy. The floors were covered with cat feces, cat litter, and clutter to such a degree that the floors were impassible. The bedroom doors were unable to be opened because of the clutter stacked against the doors and wall, and old food was found along the walls in the kitchen area."
In paragraph 5(B), the State alleged that D.F. was living in an environment injurious to her welfare in that she had been diagnosed with "Non-organic Failure to Thrive Syndrome." 705 ILCS 405/2-3(1)(b) (West 1996).
In April 1998, respondent admitted and stipulated to the allegations in paragraph 5(A) of the State's petition for adjudication of wardship. The State dismissed the allegation contained in paragraph 5(B), and the trial court adjudicated D.F., T.K., and E.K. neglected.
The dispositional hearing on the trial court's adjudication of neglect took place on May 27, 1998, and August 12, 1998. After the May 1998 hearing, the court entered an order naming DCFS temporary custodian of all three of the minors. However, D.F. was not removed from respondent's home until after the hearing concluded in August 1998. At the close of that hearing, the court entered a dispositional order that adjudicated D.F. a ward of the court and appointed DCFS D.F.'s *62 guardian with the power to place her. 705 ILCS 405/2-27(1) (West 1998).
In December 1999, the State filed a petition to terminate respondent's parental rights pursuant to section 1(D)(m) of the Adoption Act (Act) (750 ILCS 50/1(D)(m) (West 1998)). In its May 2000 amended petition, the State alleged that respondent was unfit because (1) he failed to make reasonable efforts to correct the conditions that were the basis for the removal of D.F. (750 ILCS 50/1(D)(m)(i) (West Supp. 1999)); (2) he failed to make reasonable progress toward the return of D.F. since the adjudication of neglect (750 ILCS 50/1(D)(m)(ii) (West Supp.1999)); and (3) he failed to make reasonable progress toward D.F.'s return during any nine-month period after the end of the initial nine-month period following the adjudication of neglect (750 ILCS 50/1(D)(m)(iii) (West Supp.1999)).
Following a May 2000 fitness hearing, the trial court found that the State had proved respondent unfit based on the first and third grounds alleged. The court conducted a dispositional hearing later that day and found that it was in D.F.'s best interest to terminate respondent's parental rights. This appeal followed.

II. ANALYSIS
A court can sever a natural parent's rights to his or her child only through proceedings that strictly comply with the Act. In re C.M., 305 Ill.App.3d 154, 163, 238 Ill.Dec. 422, 711 N.E.2d 809, 815 (1999). Because the trial court here considered evidence of conduct that occurred outside of the statutorily prescribed time periods for each of the alleged grounds of unfitness, we vacate its order and remand for reconsideration of the evidence.
On January 1, 2000, an amended version of section 1(D)(m) of the Act went into effect. See Pub. Act 91-373, § 5, eff. January 1, 2000 (1999 Ill. Laws 4971, 4973-74). Section 1(D)(m) of the Act, in pertinent part, now reads as follows:
"The grounds of unfitness are any * * * of the following:
* * *
(m) Failure by a parent (i) to make reasonable efforts to correct the conditions that were the basis for the removal of the child from the parent, or (ii) to make reasonable progress toward the return of the child to the parent within [nine] months after an adjudication of neglected or abused minor * * *, or (iii) to make reasonable progress toward the return of the child to the parent during any [nine]-month period after the end of the initial [nine]-month period following the adjudication of neglected or abused minor * * *." 750 ILCS 50/1(D)(m) (West Supp.1999).
Prior to the January 2000 amendment, the grounds for a finding of unfitness pursuant to section 1(D)(m) of the Act were defined, in pertinent part, as follows:
"Failure by a parent to make reasonable efforts to correct the conditions that were the basis for the removal of the child from the parent, or to make reasonable progress toward the return of the child to the parent within [nine] months after an adjudication of neglected or abused minor * * *." 750 ILCS 50/1(D)(m) (West 1998).
The supreme court addressed an earlier version of section 1(D)(m) of the Act in In re D.L., 191 Ill.2d 1, 8, 245 Ill.Dec. 256, 727 N.E.2d 990, 993 (2000), in which the language of section 1(D)(m) was identical to the preamendment version quoted above, except that the relevant time period was 12 months rather than 9 (750 ILCS 50/1(D)(m) (West 1994)). In D.L., the court held that, pursuant to section 1(D)(m) of the Act, the only matters relevant to a reasonable progress or reasonable efforts analysis are those that occurred within the applicable statutory time period. D.L., 191 Ill.2d at 10, 245 Ill.Dec. 256, 727 N.E.2d at 994. In In re D.S., 313 Ill.App.3d 1020, 1027-28, 246 Ill.Dec. 612, 730 N.E.2d 637, 643-44 (2000), this court *63 held that the relevant statutory period (in that case, nine months) commences with the trial court's dispositional order completing the adjudication of neglect and making the child a ward of the court. The dispositional hearing is the one at which the trial court typically becomes fully informed about all aspects of the lives of the parents and children before it and admonishes the parents that they must cooperate with DCFS, comply with the terms of the service plans, and correct the conditions that caused the court to place the child in custodial care. D.S., 313 Ill.App.3d at 1028, 246 Ill.Dec. 612, 730 N.E.2d at 643. At the dispositional hearing, the court also typically warns the parents of the possible consequences of their failure to act as directed, that is, the termination of their parental rights.
Although the supreme court in D.L. did not do so explicitly, this court held that this decision effectively overruled this court's decision in In re K.B.J., 305 Ill. App.3d 917, 922, 238 Ill.Dec. 1007, 713 N.E.2d 253, 257 (1999), in which we concluded that the statutory time period only applied to the reasonable progress analysis, not to the reasonable efforts analysis. See In re E.B., 313 Ill.App.3d 672, 674, 246 Ill.Dec. 592, 730 N.E.2d 617, 618 (2000). The phraseology and construction of the current version of section 1(D)(m) of the Act, however, strongly suggest that the legislature did not intend the nine-month limitation to apply to a reasonable efforts analysis. The current version sets forth three separate enumerated grounds, specifying a time period for the second and third but not the first. See 750 ILCS 50/1(D)(m) (West Supp.1999).
In D.L., 191 Ill.2d at 10-11, 245 Ill.Dec. 256, 727 N.E.2d at 994-95, the supreme court concluded that section 1(D) of the Act demonstrated that the legislature believed that, for purposes of establishing certain allegations of unfitness, evidence regarding a parent's conduct should be limited to a specified time period. However, given the most recent amendment to section 1(D)(m) of the Act, the application of the supreme court's decision to that section now appears to be in doubt regarding the "reasonable efforts" prong.
Although this amendment to section 1(D)(m) of the Act appears to redefine the outside limit of the relevant time period for a reasonable efforts analysis, we do not believe that it alters established precedent regarding the starting point of that analysis. Thus, the trial court in this case erred if, in conducting its reasonable efforts analysis, it considered evidence of events that occurred before the filing of the August 12, 1998, dispositional order completing the adjudication of neglect.
The record makes clear that the trial court considered evidence of events that occurred between the April 1998 adjudicatory hearing and the May 1998 order making DCFS the custodian of D.F. The record is not clear whether the court applied these considerations to both its reasonable efforts and its reasonable progress analyses. If the court considered this evidence in making its finding that respondent failed to make reasonable efforts pursuant to section 1(D)(m)(ii) of the Act, the court erred.
The relevant time period for the trial court's reasonable progress analysis pursuant to section 1(D)(m)(ii) of the Act began on August 12, 1998, the date the trial court filed the dispositional order as to D.F., and ended nine months later, on May 12, 1999. The trial court, however, concluded that the nine-month period began on April 2, 1998, the date of the adjudicatory hearing, and ended on January 2, 1999. Therefore, the court again considered evidence of events that occurred too early; that is, before the adjudication of neglect became final upon the filing of the dispositional order. To the extent the court did so, the court erred.
The trial court necessarily further erred when it considered the "second nine-month period" as beginning in January 1999. Pursuant to section 1(D)(m)(iii) of the Act, *64 the second nine-month period could not begin until sometime after May 12, 1999, when the initial nine-month period lapsed. The court therefore erred to the extent that it considered evidence regarding events that actually occurred in the initial nine-month period as being in the second nine-month period.
We hold, consistent with the supreme court's interpretation of section 1(D)(m) of the Act in D.L., that sections 1(D)(m)(ii) and 1(D)(m)(iii) designate two separate nonoverlapping time periods. Therefore, when the State alleges grounds for unfitness under both of these subsections, the trial court must decide each allegation based only on the evidence pertaining to the designated period.
To avoid the issue presented by this appeal, trial courts in the future should make explicit the beginning and ending dates upon which they base their findings. In this case, for example, the court should have stated the following:
"As to the grounds alleged in section 9B of the State's petition, that respondent has failed to make reasonable progress toward D.F.'s return within nine months after the adjudication of neglect, I have limited my consideration of evidence of respondent's conduct and other relevant matters that occurred to between August 12, 1998, and May 12, 1999."
Likewise, when the State alleges grounds pursuant to section 1(D)(m)(iii) of the Act, a court should state precisely which nine-month period following the initial nine-month period it considered.
Because the trial court based its decision as to each of the alleged grounds of unfitness on evidence pertaining to occurrences outside the time periods applicable to those grounds, we vacate the court's order terminating respondent's parental rights and remand with directions for the court to review the evidence presented and determine respondent's parental fitness under the Act by reference only to the evidence of events that occurred within each of the relevant time periods.

III. CONCLUSION
For the reasons stated, we vacate the trial court's judgment and remand with directions.
Vacated and remanded with directions.
GARMAN and KNECHT, JJ., concur.