*In re* D.F. *et al.*, Minors (The People of the State of Illinois, Petitioner-Appellee, v. L.F., Respondent-Appellant).

First District (3rd Division)    No. 1—01—1034

Opinion filed June 28, 2002.

Rita A. Fry, Public Defender, of Chicago (Karen M. Florek, Assistant Public Defender, of counsel), for appellant.

Richard A. Devine, State's Attorney, of Chicago (Renee Goldfarb, Nancy Grauer Kisicki, and Peter Maltese, Assistant State's Attorneys, of counsel), for the People.

Patrick T. Murphy, Public Guardian, of Chicago (Charles P. Golbert and Deborah Pergament, of counsel), guardian *ad litem*.

JUSTICE WOLFSON delivered the opinion of the court:

Deshawn F. and Danella F. were taken from their mother, Lashawn F., and placed in foster care after their well-being came to the attention of the Illinois Department of Children and Family Services (DCFS).

At an adjudicatory hearing, the trial court found the children were abused and neglected and, at the dispositional hearing, adjudged them wards of the court. Then, after an evidentiary hearing, the trial court found Lashawn was an unfit parent on the following grounds: (1) she failed to make reasonable efforts to correct the conditions that were the basis for the removal of the children within nine months after the adjudication of abuse and neglect, and (2) she failed to make reasonable progress toward the return of the children within the same time period.

Lashawn appeals the trial court's judgment, contending the trial court applied the wrong time periods in evaluating both her efforts and her progress. According to Lashawn, when we consider the proper time periods we should conclude the trial court's findings are against the manifest weight of the evidence. We affirm the trial court's judgment.

## FACTS

Deshawn was born on March 27, 1994, and Danella was born on

July 25, 1992. Both children tested positive for cocaine shortly after birth. Deshawn was also treated for syphilis. DCFS was notified about the family after Deshawn was born.

On January 18, 1995, the State filed petitions to adjudicate Danella and Deshawn wards of the court and moved to place the children in the temporary custody of the DCFS guardianship administrator. The court found probable cause existed that the children were abused and neglected, and placed them in temporary custody.

The trial court held the adjudicatory hearing on June 16, 1995. At the hearing, Mark Kolp, a paramedic for the Chicago police department, testified he responded to a 911 call on September 15, 1994. Lashawn made the call for an ambulance to take Deshawn to the hospital. When Kolp questioned Lashawn, Lashawn responded she had just returned home after being away for four hours during which time she "was drinking and smoking reefer." Kolp was also able to learn from Lashawn that Deshawn was "a cocaine baby."

During the ride to the hospital, Kolp observed Lashawn shaking and unable to maintain a thought. He also noticed both Lashawn and the child were unclean and unkempt. Kolp said he believed he told Lashawn he intended to contact DCFS out of concern for Lashawn's ability to care for Deshawn.

DCFS Investigator Levelle Kimble testified he investigated Lashawn's residence on September 15, 1994. During the visit, he observed roaches in the home and that the home was "very untidy."

On January 12, 1995, Kimble again visited Lashawn, this time at a new residence. During this visit, Kimble observed the home had roaches and was not adequately clean and the children were dirty.

The State then introduced evidence that both Danella and Deshawn tested positive for the presence of cocaine metabolites in their system shortly after birth. The State also introduced a report indicating Lashawn was admitted to the hospital after complaining of hearing voices. Lashawn was diagnosed as having "Access 1 major depression with psychotic features" and discharged on November 19, 1994, with medication.

Lashawn then introduced a report prepared by a doctor at the hospital where Deshawn was treated on September 15, 1994. In the report, the doctor disagreed with an assessment that Lashawn was unable to care for Deshawn. According to the doctor's report, Lashawn appeared well bonded to Deshawn.

At the conclusion of the hearing, the court found "that the minors are neglected as to controlled substance as well as injurious environment and that they are abused in that they have been subjected to substantial risk of harm."

At the dispositional hearing on February 14, 1996, the trial court again heard how the case came to the attention of DCFS. Derrick Cargle, the DCFS caseworker assigned to this case in November 1994, also testified Lashawn had a service plan available to her that included recommendations to follow up on drug rehabilitation referrals and complete a psychological evaluation and special clinical services requirements. Lashawn did not comply with the service plan. She only completed one of the ''psychologicals'' and two initial screenings (presumably for drug treatment programs), but failed to follow up with those services. Lashawn's reason for not participating in services was that she had no transportation. But Cargle testified he agreed to provide her with tokens.

Cargle also testified the children were currently placed with Lorelle Boyce, their great-aunt, and that the children were doing well there. Lashawn visited them only sporadically. Cargle recommended the court take guardianship of Danella and Deshawn. He did not recommend any unsupervised contact between Lashawn and the children.

At the conclusion of the hearing, the trial court found it in the best interests of the children to adjudge them wards of the court. The court found Lashawn unable to care for, protect, train, or discipline the children. The children were allowed to remain with Boyce.

On November 1, 1999, the State filed supplemental petitions for the appointment of a guardian with right to consent to the adoption of the minors. The petitions contained numerous grounds of parental unfitness, including:

> ''[Lashawn] failed to make reasonable efforts to correct the conditions which were the basis for the removal of the child[ren] from [her] within 9 months after the adjudication of neglect or abuse under the Juvenile Court Act *** which conduct is in violation of 750 ILCS 50/1D(m) ***.

> and/or

> [Lashawn] failed to make reasonable progress toward the return of the child[ren] to [her] within 9 months after the adjudication of neglect or abuse under the Juvenile Court Act *** which conduct is in violation of 750 ILCS 50/1D(m) ***.''

On August 18, 2000, the hearing to determine whether Lashawn was a fit parent began. The trial court heard testimony from several caseworkers and Lashawn. The parties also introduced into evidence various documents, including service plans prepared and evaluated by the caseworkers that documented, among other things, Lashawn's cooperation with the caseworkers' recommendations.

On December 1, 2000, the court found Lashawn was unfit because ''she *** failed to make reasonable efforts to correct the conditions

"which were the basis for the removal of the child[ren from her] within nine months after the adjudication [of] neglect or abuse under the Juvenile Court Act and *** failed to make reasonable progress toward the return of the child[ren to her] within nine months after the adjudication of neglect or abuse under the Juvenile Court Act."

The court also said the relevant time period to assess Lashawn's efforts and progress was from June 15, 1995—the date the children were adjudicated neglected and abused—to March 15, 1996. The record indicates the actual date the children were adjudicated neglected was June 16, 1995.

On January 30, 2001, the court held a hearing on whether it was in the best interests of the children to terminate Lashawn's parental rights. The court heard testimony from Carla Wages, Lashawn's caseworker at the time; Boyce; Lashawn; and Edwina Hood, Lashawn's sister and a potential adoptive parent. At the conclusion of the hearing, the court determined it was *not* in the best interests of the children to terminate Lashawn's parental rights.

Lashawn now appeals the trial court's December 1, 2000, finding of unfitness, contending: (1) under the current version of section 1(D)(m) of the Adoption Act (750 ILCS 50/1(D)(m) (West 2000)), the trial court did not consider evidence from the appropriate time periods in making its findings; and (2) evidence presented from the proper time periods shows the trial court's findings are against the manifest weight of the evidence. In the alternative, Lashawn says we should vacate the finding of unfitness and direct the trial court on remand to evaluate the evidence under the relevant time periods.

## DECISION

### The Juvenile Court Act of 1987 and the Adoption Act

■ Under the Juvenile Court Act of 1987, the involuntary termination of parental rights involves a two-step process: (1) the State must prove the parent is unfit as defined in section 1(D) of the Adoption Act (750 ILCS 50/1(D) (West 2000)); and (2) the court considers whether it is in the best interests of the minor to terminate parental rights. 705 ILCS 405/2—29(2) (West 1998); see also *In re C.W.*, 199 Ill. 2d 198, 210, 766 N.E.2d 1105 (2002). The Adoption Act lists various grounds under which a parent may be found unfit. 750 ILCS 50/1(D) (West 2000).

■ Under the version of the Act in place at the time the State filed its supplemental petitions for appointment of a guardian with the right to consent to adoption, section 1(D)(m) contained the following two grounds for unfitness:

> "Failure by a parent to make reasonable efforts to correct the conditions that were the basis for the removal of the child from the parent, or to make reasonable progress toward the return of the child to the parent within 9 months after an adjudication of neglected or abused minor \*\*\* or dependent minor \*\*\*." 750 ILCS 50/1(D)(m) (West 1998).

Effective January 1, 2000, the legislature amended the section to read:

> "Failure by a parent (i) to make reasonable efforts to correct the conditions that were the basis for the removal of the child from the parent, or (ii) to make reasonable progress toward the return of the child to the parent within 9 months after an adjudication of neglected or abused minor \*\*\* or dependent minor \*\*\*, or (iii) to make reasonable progress toward the return of the child to the parent during any 9-month period after the end of the initial 9-month period following the adjudication of neglected or abused minor \*\*\* or dependent minor \*\*\*." 750 ILCS 50/1(D)(m) (West 2000).

The parties agree we should use the statute as amended to determine the appropriate time periods applicable in this case.

Lashawn contends that under the current version of the statute, the nine-month period to assess a parent's fitness is limited to the reasonable progress ground and does not apply to the reasonable efforts ground. Lashawn also contends the proper date to begin assessing whether the parent has made reasonable efforts or reasonable progress is the date of the dispositional order, not the date of the adjudication of neglect, abuse, or dependency. Lashawn finally contends, when viewing the evidence from the appropriate time period, the trial court's findings are against the manifest weight of the evidence.

### Applicability of the Nine-Month Period to the "Reasonable Efforts" Analysis

In support of her contention that the nine-month limitation does not apply to the reasonable efforts analysis, Lashawn relies on *In re D.F.*, 317 Ill. App. 3d 461, 740 N.E.2d 60 (2000). In that case, the Fourth District said the 2000 amendment to section 1(D)(m) "strongly suggest[s] that the legislature did not intend the nine-month limitation to apply to a reasonable efforts analysis. The current version sets forth three separate enumerated grounds, specifying a time period for the second and third but not the first." *In re D.F.*, 317 Ill. App. 3d at 464-65. The Fourth District also said the amendment placed in doubt the supreme court's holding in *In re D.L.*, 191 Ill. 2d 1, 727 N.E.2d 990 (2000). *In re D.F.*, 317 Ill. App. 3d at 464-65.

In *In re D.L.*, the supreme court concluded that under the pre-amended statute, the then 12-month limitation in section 1(D)(m) (amended to nine months in 1997) applied to *both* the reasonable efforts and reasonable progress grounds listed in the section. *In re D.L.*, 191 Ill. 2d at 10.

■ Purely legal issues regarding the proper construction of a statute are reviewed *de novo*. *In re C.W.*, 199 Ill. 2d at 211. The primary objective in construing a statute is to give effect to the intention of the legislature. *In re C.W.*, 199 Ill. 2d at 211. Where the statutory language is clear and unambiguous, a court must give effect to the statute as written. *In re C.W.*, 199 Ill. 2d at 211.

■ Where the legislature has amended a statute after it has been interpreted in the courts, "we presume the legislature was aware of the judicial construction and acted with that knowledge. [Citation.] Thus, where the amendment did not change the substance of the statute, prior judicial interpretations retain their validity." *S.D. v. Kishwaukee Community Hospital*, 288 Ill. App. 3d 472, 477-78, 681 N.E.2d 140 (1997); see also *Bruso v. Alexian Brothers Hospital*, 178 Ill. 2d 445, 458-59, 687 N.E.2d 1014 (1997) (legislature did not intend to amend clause that was previously interpreted by courts where amendment to the statute did not substantively change the clause at issue).

■ Under the clear and unambiguous language of the amended section 1(D)(m) and the holding in *In re D.L.*, a court's review of a parent's efforts to correct the conditions that were the basis for the removal of the minor is limited to the nine-month period following the adjudication of neglect, abuse, or dependency. The supreme court held "the relevant period of time under this provision, in which the parent's *efforts or progress* must be assessed and measured, is the 12-month period following the adjudication." (Emphasis added.) *In re D.L.*, 191 Ill. 2d at 10. The legislature's amendment that shortened the relevant time period from 12 months to 9 months did not affect the supreme court's holding. See *In re J.A.*, 316 Ill. App. 3d 553, 564, 736 N.E.2d 678 (2000) (subsection (m) limits the evidence that may be considered for both reasonable progress and reasonable efforts to the nine-month period following the adjudication of neglect).

We respectfully disagree with the Fourth District's conclusion that the 2000 amendment "*strongly suggest[s]* that the legislature did not intend the nine-month limitation to apply to a reasonable efforts analysis" and that "the application of the supreme court's decision [in *In re D.L.*] to [section 1(D)(m)] now appears to be *in doubt* regarding the 'reasonable efforts' prong." (Emphasis added.) *In re D.F.*, 317 Ill. App. 3d at 464-65. Contrary to the Fourth District's position, the 2000 amendment did not substantively change the language interpreted by

the supreme court in *In re D.L.* The Fourth District reads too much into the legislature's addition of numbers and a third element.

In the 2000 amendment, the *only* change the legislature made to the language interpreted by the supreme court in *In re D.L.* was to add lowercase roman numerals. The only other change the legislature made to section 1(D)(m) in the 2000 amendment was to add another ground under which a court may find a parent unfit. In light of the additional ground added to the section, the legislature added the roman numerals to maintain clarity in the statute. Because the amendment did not change the wording of the sections of the statute examined by the supreme court in *In re D.L.*, the supreme court's interpretation retains its validity and applicability to the current section 1(D)(m).

This interpretation of the amended statute is entirely consistent with other provisions of the Adoption Act and with the purpose of the Juvenile Court Act. Section 20a of the Adoption Act states:

> "It is in the best interests of persons to be adopted that this Act be construed and interpreted so as not to result in extending time limits beyond those set forth herein." 750 ILCS 50/20a (West 1998).

As the supreme court said, reading section 1(D)(m) to allow the court to consider evidence beyond the period specified in the section "would be inconsistent with the preceding provision." *In re D.L.*, 191 Ill. 2d at 11. Section 20 of the Adoption Act requires "[p]roceedings under this Act *** receive priority over other civil cases in being set for hearing." 750 ILCS 50/20 (West 1998). Also, "[a]n appeal from a judgment order for adoption or other appealable orders under this Act shall be prosecuted and heard on an expedited basis." 750 ILCS 50/20 (West 1998). Section 1—2 of the Juvenile Court Act of 1987 provides that when a child is removed from the custody of his parent DCFS shall consider concurrent planning, "so that permanency may occur *at the earliest opportunity*." (Emphasis added.) 705 ILCS 405/1—2 (West 1998).

All these provisions show a desire by the legislature to expedite adoptions and provide a permanent environment for the minor as soon as possible. Reading section 1(D)(m) as allowing a parent a potentially unlimited amount of time to exhibit reasonable efforts towards the return of the child is inconsistent with these provisions.

Under the current version of the statute, a trial court's review of a parent's reasonable efforts and reasonable progress for the purposes of determining fitness is limited to the nine-month period following the adjudication of neglect, abuse, or dependency.

## The Starting Date of the Nine-Month Period

Lashawn also contends the appropriate date to begin measuring

the nine-month period is the date the court determined the disposition of the minors, February 14, 1996, not the date the trial court adjudicated the minors neglected and abused, June 16, 1995. In support of her contention, Lashawn cites *In re D.S.*, 313 Ill. App. 3d 1020, 730 N.E.2d 637 (2000), along with other cases that either rely on *In re D.S.* or contain no analysis on the issue.

In *In re D.S.*, the Fourth District held the nine-month time period specified in section 1(D)(m) under which the court should review the parent's progress begins on the filing of the dispositional order. *In re D.S.*, 313 Ill. App. 3d at 1028. In reaching its conclusion, the Fourth District said the supreme court's use of the date of adjudication of neglect in calculating the appropriate time period in *In re D.L.* was not binding. *In re D.S.*, 313 Ill. App. 3d at 1027-28. According to the Fourth District, the issue before the court in *In re D.L.* was whether the trial court could look beyond the then 12-month period dictated by section 1(D)(m), not whether the date of the adjudication of neglect, abuse, or dependency was the proper start date for the 12-month period. *In re D.S.*, 313 Ill. App. 3d at 1027-28.

The Fourth District held the filing of the dispositional order was the appropriate starting date because "[t]he filing of the dispositional order completes the adjudication, renders it final, and gives rise to the right to appeal the adjudication of neglect, abuse, or dependency." *In re D.S.*, 313 Ill. App. 3d at 1028. The court observed that had the legislature intended the time period begin on the date of the adjudicatory finding of neglect, abuse, or dependency, as opposed to the date of the dispositional order, the legislature would have said so as it did in section 1(D)(m—1). *In re D.S.*, 313 Ill. App. 3d at 1028, citing 750 ILCS 50/1(D)(m—1) (West 1998) ("the date of entering foster care is the earlier of: (i) the date of a judicial finding at an adjudicatory hearing that the child is an abused, neglected, or dependent minor").

Lashawn waived the issue of whether the trial court erred in using the date of adjudication of neglect and abuse as the appropriate start date for the nine-month period under section 1(D)(m). At trial, Lashawn's counsel not only failed to object to the time period used, but also invited the court to choose the date of adjudication of neglect in his closing argument when he said: "Reasonable efforts, your Honor, should then be considered from the date of the adjudication, which as June of '95; or the date of the disposition which was February 14th of '96." See *In re April C.*, 326 Ill. App. 3d 225, 242, 760 N.E.2d 85 (2001) ("[w]here a party fails to make an appropriate objection in the court below, he or she has failed to preserve the question for review and the issue is waived"). We, nonetheless, choose to address the matter. See *Kus v. Sherman Hospital*, 268 Ill. App. 3d 771, 782, 644 N.E.2d

1214 (1995) ("[T]he waiver rule is a limitation on the parties to an appeal, not on the reviewing court"). Again, we respectfully disagree with the Fourth District.

■ We find Lashawn's contention that the date of the dispositional order is the appropriate start date is incorrect. The supreme court has emphasized the importance of applying the plain language of the Adoption Act. *In re C.W.*, 199 Ill. 2d at 212-15. The plain language of section 1(D)(m) says the relevant time period during which to assess a parent's conduct begins after the "adjudication of neglected or abused minor under Section 2—3 of the Juvenile Court Act of 1987 or dependent minor under Section 2—4 of that Act." 750 ILCS 50/1(D)(m) (West 2000). The statute does *not* say the relevant period begins on the date the children are adjudged wards of the court.

Any ambiguity Lashawn may read into the statute should be dispelled by those sections of the Juvenile Court Act that explain what occurs at the adjudicatory hearing and the dispositional hearing.

Section 2.1 of the Adoption Act says that the Act "shall be construed in concert with the Juvenile Court Act of 1987." 750 ILCS 50/2.1 (West 1998). Under the Juvenile Court Act, "adjudicatory hearing" is defined in relevant part as "a hearing to determine whether the allegations *** that a minor *** is abused, neglected or dependent *** are supported by a preponderance of the evidence." 705 ILCS 405/1—3(1) (West 2000). The Juvenile Court Act defines "dispositional hearing" as "a hearing to determine whether a minor should be adjudged to be a ward of the court, and to determine what order of disposition should be made in respect to a minor adjudged to be a ward of the court." 705 ILCS 405/1—3(6) (West 2000).

Sections 2—21 and 2—22 reemphasize the adjudication of neglect, abuse, or dependency occurs before the dispositional hearing and the trial court's role in the dispositional hearing is not to determine whether the minor is neglected, abused, or dependent. Section 2—21(2) states in part:

"If *** the court determines *** that the minor is either abused or neglected or dependent [at the adjudicatory hearing], the court shall then set a time *** for a dispositional hearing *** to be conducted under Section 2—22 at which hearing the court shall determine whether it is consistent with the health, safety and best interests of the minor and the public that he be made a ward of the court." 705 ILCS 405/2—21(2) (West 1998).

Section 2—22(1) reiterates the purpose of the dispositional hearing: to "determine whether it is in the best interests of the minor and the public that he be made a ward of the court, and, [if so, to] determine the proper disposition best serving the health, safety and

interests of the minor and the public." 705 ILCS 405/2—22(1) (West 1998).

These sections of the Juvenile Court Act show the dispositional hearing does not involve adjudicating whether the minor is abused, neglected, or dependent. That determination is made at the adjudicatory hearing, which occurs before the dispositional hearing. Thus, "an adjudication of neglected or abused minor" as used in section 1(D)(m) of the Adoption Act does *not* refer to the trial court's findings at the dispositional hearing, but instead to the trial court's findings at the adjudicatory hearing. As the State said, had the legislature intended the nine-month time period to begin on the date the dispositional order is entered, it could have easily said the period begins after "the adjudication of the minor as a ward of the court."

Lashawn's contention disregards our previous uses of the date the trial court found the minor neglected, abused, or dependent in determining the relevant period during which to assess a parent's efforts or progress under section 1(D)(m). See, *e.g,* *In re M.A.*, 325 Ill. App. 3d 387, 392, 757 N.E.2d 613 (2001); *In re D.H.*, 323 Ill. App. 3d 1, 11, 751 N.E.2d 54 (2001); *In re C.M.*, 319 Ill. App. 3d 344, 357, 744 N.E.2d 916 (2001); *In re B.S.*, 317 Ill. App. 3d 650, 658, 661, 740 N.E.2d 404 (2000). For example, in *In re B.S.*, the trial court used the date the minor was adjudged a ward of the court as the beginning of the relevant time period instead of the date the minor was adjudged dependent. We held the relevant time period to evaluate whether the parent made reasonable efforts or progress began on the date the minor was adjudicated dependent, not on the date of the dispositional order. *In re B.S.*, 317 Ill. App. 3d at 658, 661.

The supreme court also used the date the trial court found the minor neglected, abused, or dependent in determining the relevant period under section 1(D)(m) in *In re D.L.*, 191 Ill. 2d at 13. We disagree with Lashawn's characterization of the supreme court's use of the adjudicatory finding as the appropriate start date as *dicta.* Unlike the Fourth District, we would interpret *In re D.L.* as establishing the relevant time period in which the trial court should assess the parent's efforts and progress.

In *In re D.L.*, the trial court adjudged the minor neglected and a ward of the court. The State filed a supplemental petition for the termination of the mother's parental rights on several grounds. More than three years after the minor was adjudged a ward of the court, the trial court found the mother was *not* unfit. The trial court relied on the mother's conduct occurring more than 12 months after the adjudication of neglect. *In re D.L.*, 191 Ill. 2d at 8. The appellate court reversed, finding she was unfit under three grounds, one of which was

the mother's failure to make reasonable progress toward the return of the child within the 12 months following the adjudication of neglect. *In re D.L.*, 191 Ill. 2d at 7.

The mother appealed only from the finding she was unfit for failure to make reasonable progress, contending the trial court properly considered her recent attempts to improve her life and regain custody of the minor. The supreme court rejected her argument, concluding, under section 1(D)(m) as it then existed, the trial court could consider only the parent's efforts or progress within the 12 months following the adjudication of neglect. *In re D.L.*, 191 Ill. 2d at 10. In determining the exact time period applicable to her case, the supreme court used the date the trial court adjudged the minor neglected, not the date the trial court adjudged the minor a ward of the court. *In re D.L.*, 191 Ill. 2d at 13.

The issue in *In re D.L.* was the exact time period during which the trial court could assess the parent's efforts and progress under section 1(D)(m). Necessary to the supreme court's analysis was a determination of the proper start date for the relevant time period. The supreme court's designation of the date of adjudication of neglect as the appropriate start date was not *dicta*. It was necessary to the decision in the case.

Use of the date the minor is adjudicated neglected, abused, or dependent, as opposed to the date of the dispositional order, is consistent with the purposes underlying the Adoption Act and the Juvenile Court Act discussed in the previous section: to expedite issues relating to the custody of minors.

We conclude the trial court did not err in using the date it issued its findings of neglect as the start date for the nine-month period during which Lashawn's efforts and progress were considered.

## The Trial Court's Findings

Lashawn also contends that if we use the proper time periods, the trial court's findings of lack of reasonable efforts and lack of reasonable progress would be against the manifest weight of the evidence.

■ The State must prove parental unfitness by clear and convincing evidence. *In re D.L.*, 326 Ill. App. 3d 262, 270, 760 N.E.2d 542 (2001). Because the trial court's opportunity to view and evaluate the parties and their testimony is superior to that of the reviewing court, a trial court's finding of unfitness is entitled to great deference and will be disturbed on appeal only if it is against the manifest weight of the evidence. *In re Grant M.*, 307 Ill. App. 3d 865, 868, 719 N.E.2d 195 (1999). The trial court's finding is against the manifest weight of the evidence when the opposite conclusion is clearly evident. *In re D.L.*, 326 Ill. App. 3d at 270.

■ The Adoption Act contains several grounds for unfitness; proof of any one of them is sufficient to support a finding of unfitness. *In re C.W.*, 199 Ill. 2d at 210. Under section 1(D)(m), reasonable efforts and reasonable progress are two distinct grounds of unfitness, each requiring separate analysis. *In re J.A.*, 316 Ill. App. 3d 553, 564, 736 N.E.2d 678 (2000).

■ Reasonable progress is an objective standard that focuses on the steps the parent has taken toward the goal of reunification. *In re B.S.*, 317 Ill. App. 3d at 658. The standard by which progress is measured is the parent's compliance with the court's directives, service plans, or both. *In re J.A.*, 316 Ill. App. 3d at 564. Reasonable progress requires, at a minimum, the parent make measurable or demonstrable movement toward the goal of reunification. *In re B.S.*, 317 Ill. App. 3d at 658.

■ Reasonable efforts, on the other hand, is a subjective review of the parent's achievements. *In re B.S.*, 317 Ill. App. 3d at 658. The court must determine whether the parent has made "earnest and conscientious strides" toward correcting the conditions which led to the removal of the children. *In re B.S.*, 317 Ill. App. 3d at 658. A parent's deficiencies collateral to the conditions that were the basis for the removal of the children are not relevant to the reasonable efforts analysis. *In re B.S.*, 317 Ill. App. 3d at 658.

■ Restricting our review of the evidence to the nine-month period following the adjudication of neglect, June 16, 1995, to March 16, 1996, we disagree with Lashawn's contention that the trial court's findings are against the manifest weight of the evidence. During the fitness hearing, the State introduced a DCFS service plan, prepared and evaluated by Cargle, Lashawn's caseworker, during the relevant time period. The service plan covered the period from August 1995 to February 1996.

According to the service plan, the problems or conditions to be addressed by the plan were Lashawn's drug usage and her emotional health, including problems resulting from depression. Among the tasks Lashawn was supposed to complete according to the service plan were: (1) enroll in a substance abuse program; (2) complete a urine analysis and forward DCFS a copy of the results; (3) enter a job training program; and (4) participate in a parenting class. Cargle rated Lashawn unsatisfactory on each of these tasks. The State provided no evidence concerning Lashawn's efforts or progress during March 1996.

Lashawn testified she did not attend all the referrals made by Cargle because she did not have transportation. She also said she was unable to reach Cargle to explain the situation. Lashawn admitted she attended several meetings of a substance abuse program, but did not

complete the program. She said that during the relevant time period she visited the children regularly. Lashawn also introduced into evidence orders of the trial court showing Cargle failed to submit to the trial court the next period's service plan when it was due.

Based on the evidence, the trial court concluded Lashawn failed to make both reasonable efforts and reasonable progress toward the return of her children. We conclude the opposite result is *not* clearly evident. Lashawn's participation in substance abuse programs, parenting classes, drug screening, and job training were essential to correcting the problems that led to the removal of the children. Yet, Lashawn did not satisfactorily complete one of those tasks. Lashawn's failure to complete any of these tasks does not demonstrate any measurable or demonstrable movement toward the return of the children.

The only evidence Lashawn presented in her favor was that she visited the children regularly, about twice a week. Apparently the trial court concluded Lashawn's visits did not outweigh her noncompliance with the service plan. This conclusion is not against the manifest weight of the evidence.

We understand "[t]he involuntary termination of a parent's rights is a drastic step that permanently severs the parent-child relationship." *In re J.J.*, 201 Ill. 2d 236, 246 (2002). For that reason we have carefully reviewed the record to ensure the existence of clear and convincing evidence of unfitness during the statutorily dictated relevant time periods.

Lashawn directs this court to the efforts she made in 2000 to comply with the then-current service plans. The trial court was not permitted to consider any evidence outside the nine-month period dictated by section 1(D)(m). Thus, Lashawn's progress and efforts in 2000 are irrelevant to the fitness determination. As Lashawn admitted during the January 30, 2001, hearing, "I have done everything that I was supposed to do; but I didn't do it, you know, in the time span that I had to do it. And, you know, honestly, it's probably too little too late."

## CONCLUSION

We agree with the State and the public guardian that the trial court did not err in reviewing Lashawn's efforts and progress during the nine-month period immediately following the trial court's findings that Danella and Deshawn were neglected and abused. We also conclude the trial court's findings that Lashawn was an unfit parent because she failed to make reasonable efforts and reasonable progress

toward the return of the children are not against the manifest weight of the evidence.

Affirmed.

CERDA and SOUTH, JJ., concur.