*In re* BRIANNA B., a Minor (The People of the State of Illinois, Petitioner-Appellant, v. Bruce Brownlee *et al.*, Respondents-Appellees).

Fourth District    No. 4—01—0391

Opinion filed October 16, 2002.

John P. Schmidt, State's Attorney, of Springfield (Norbert J. Goetten, Robert J. Biderman, and Charles F. Mansfield, all of State's Attorneys Appellate Prosecutor's Office, of counsel), for the People.

William A. Pryor, of Pryor Law Offices, of Springfield, for appellee Bruce Brownlee.

JUSTICE COOK delivered the opinion of the court:

The People of the State of Illinois appeal the order of the Sangamon County circuit court denying the State's petition to terminate the parental rights of respondent mother Latrina Bailey, respondent father Maurice Brownlee, and the unknown father, in their daughter Brianna B. This court issued an order which affirmed in part and remanded in part with directions. *In re Brianna B.*, No. 4—01—0391 (December 6, 2001) (unpublished order under Supreme court Rule 23). The State filed a petition for rehearing in this court, which was denied. The Illinois Supreme Court, in the exercise of its supervisory authority, directed this court to vacate the December 6, 2001, Rule 23 order in this case and to reconsider its judgment in light of Public Act 91—373 (Pub. Act 91—373, § 5, eff. January 1, 2000 (1999 Ill. Laws 4971, 4973-74)), which amended section 1(D)(m) of the Adoption Act (750 ILCS 50/1(D)(m) (West 2000)), to determine the effect, if any, that the amendment may have on our judgment. Respondents were given leave to respond. Upon reconsideration, we find that the amendment has no effect on our judgment and again affirm in part and remand in part with directions.

## I. BACKGROUND

Respondent minor, Brianna B., born December 5, 1997, has severe medical problems, including cerebral palsy, general brain atrophy, the inability to swallow, the inability to clear her throat of accumulated fluids, severe asthma, severe allergies, and quadriplegia. Brianna B. is fed through a tube directly in her stomach. Brianna B. must be attached to multiple monitoring devices at all times because of the risk of reflux of fluid from her stomach into her esophagus and breathing passages. When these frequent episodes occur, someone must suction the fluid from Brianna B.'s mouth and airways to prevent her from choking to death. Children born with Brianna B.'s conditions generally have a life expectancy of six to seven years. Proper care for Brianna B. requires constant attention and specific skills. The requirements Brianna B. places on any caregiver are obviously very demanding.

Respondent mother is the natural mother of Brianna B. Respondent father is the only person to ever claim paternity of Brianna B. Respondent parents lived together with Brianna B. in their care until Brianna B. was taken into protective custody and a shelter-care hearing was held on March 5, 1998.

The State's petition for adjudication of wardship alleged that

Brianna B. was a neglected minor in that her environment was injurious to her welfare and she was not receiving the care and supervision, including medical care, necessary for her well-being. Specifically, witnesses testified that Brianna B. was observed to be unhooked from her monitors at times. The adjudicatory hearing was held on June 26, 1998, where Brianna B. was found to be a neglected minor on the grounds alleged in the petition. The dispositional hearing was held on July 30, 1998, where Brianna B. was made a ward of the court and placed in the custody and guardianship of the Department of Children and Family Services (DCFS). The July 30, 1998, dispositional order required the "[p]arents to cooperate with counseling, psychological evaluations[,] and continued medical treatment training that can be offered. Parents to attend all visits and be prompt for visits. Parents to cooperate with DCFS and any other service provider."

On July 2, 1999, the State filed a petition to terminate the parental rights of respondent mother, respondent father, and the unknown father. The petition alleged the following statutory grounds for finding both respondent mother and respondent father unfit pursuant to the Adoption Act (750 ILCS 50/1 *et seq.* (West 1998)):

"Failure to maintain a reasonable degree of interest, concern[,] or responsibility as to the child's welfare." 750 ILCS 50/1(D)(b) (West 1998).

"Failure by a parent [1] to make reasonable efforts to correct the conditions that were the basis for the removal of the child from the parent, or [2] to make reasonable progress toward the return of the child to the parent within 9 months after an adjudication of neglected or abused minor ***." 750 ILCS 50/1(D)(m) (West 1998).

The petition alleged the unknown father was unfit on the following statutory bases: abandonment (750 ILCS 50/1(D)(a) (West 1998)); failure to maintain a reasonable degree of interest, concern, or responsibility as to the child's welfare (750 ILCS 50/1(D)(b) (West 1998)); and evidence of intent to forgo his parental rights in a 12-month period (750 ILCS 50/1(D)(n) (West 1998)). Service by publication was made on the unknown father, but the record before us fails to show that the State filed an affidavit of due diligence describing the State's efforts to locate the unknown father.

Testimony and argument regarding the respondent parents' fitness was taken at four hearings between January and May 2000. The first caseworker testified that she was on the case from March 13, 1998, until November 5, 1998. According to this caseworker, respondent parents attended at least 80% of the visits. Both parents saw Brianna B. on at least a weekly basis, if not multiple times per week. This caseworker did not think the visits were productive, however,

because respondent mother did not learn how to care for Brianna B. and respondent father complained about the foster parents and asked for second opinions when doctors recommended elective surgeries for Brianna B.

Brianna B.'s occupational therapist testified about sessions between her and respondent parents where the therapist would teach the parents how to care for Brianna B. This therapist testified that respondent mother asked too many questions and asked the same questions repeatedly, which interfered with the sessions. Respondent father complained a lot and was quick to anger. At one session, the foster mother, who was observing from another room, actually burst in and shouted the session was over because she did not like what respondent father said about the foster mother's care of Brianna B.

The second social worker assigned to this case testified that she was on the case from November 1998 until March 1999. She testified that she had 6 visits with respondent mother and Brianna B. alone, 13 visits with respondent father and Brianna B., and 4 visits with Brianna B. and both parents. This did not include doctor's appointments and hospital visits, which would be supervised visitations as well. This caseworker also found the visits to be unproductive because of respondent mother's seeming unwillingness or inability to treat Brianna B. when she had episodes, and respondent father's temper often got in the way of progress.

A DCFS child-welfare specialist testified about her evaluation of service plans for respondent parents from September 1999 until February 2000. Her evaluations mirrored those of the caseworkers. Respondent mother did not know how to properly care for Brianna B. and respondent father had anger issues. Respondent father did successfully complete a parenting class, but it was not the class DCFS wanted him to take because it did not address "medically complex" children. Respondent father would not take the recommended class because he did not like the teacher. From the end of November 1999 until March 2000 neither parent was allowed visitation because they had not received a flu shot. The doctors recommended flu shots for all persons around Brianna B. because of her compromised immune system.

A clinical neuropsychologist testified that respondent mother tested at an intelligence quotient (I.Q.) of 62. This placed her in the "extremely low range" or what used to be called "mentally retarded." Respondent mother was in the lowest 1% of the population on most of her tests.

Various other social workers and therapists testified. The general theme was that respondent mother did not interact very well with

Brianna B. and did not learn how to care for Brianna B. Respondent father did interact well with Brianna B. and demonstrated an ability to care for Brianna B., but he did not get along with social workers and therapists or attend all the recommended counseling. At some point, respondent father was arrested and there were implications of domestic violence, which did not help the situation.

The court took the matter under advisement. On December 29, 2000, the trial court made the following docket entry: "The State's Petition for Termination of Parental Rights is denied." No best interests hearing was ever held. The State filed a motion to reconsider denial of the petition to terminate parental rights. The motion to reconsider was also denied in a single-sentence docket entry.

## II. ANALYSIS

■ The State has the burden of proving a parent's unfitness by clear and convincing evidence, and a trial court's determination of a parent's fitness will not be reversed unless it is contrary to the manifest weight of the evidence. *In re K.B.*, 314 Ill. App. 3d 739, 748, 732 N.E.2d 1198, 1206 (2000). Great deference is given to the trial court in cases involving the termination of parental rights. *K.B.*, 314 Ill. App. 3d at 748, 732 N.E.2d at 1206. The trial court apparently found that the State did not prove by clear and convincing evidence that respondent parents were unfit. While we do not know on what bases the trial court made its ruling, "we may affirm the trial court's decision on any basis established by the record." *K.B.*, 314 Ill. App. 3d at 751, 732 N.E.2d at 1208.

Three issues present themselves in this appeal: (1) was the trial court's ruling that respondent parents *did* maintain a reasonable degree of interest, concern, or responsibility as to the child's welfare (750 ILCS 50/1(D)(b) (West 1998)) against the manifest weight of the evidence; (2) was the trial court's ruling that respondent parents *did* make reasonable efforts to correct the conditions which were the basis for removal of the child from the parent, and made reasonable progress toward the return of the child to the parent within nine months after an adjudication of neglected or abused minor (750 ILCS 50/1(D)(m) (West 1998)), against the manifest weight of the evidence; and (3) was the trial court's ruling that the allegations of unfitness against the unknown father were not proved against the manifest weight of the evidence? We address each issue in turn.

### A. Reasonable Degree of Interest, Concern, or Responsibility

The evidence in this case demonstrates that respondent parents had visits with Brianna B. weekly, often multiple times per week, not including the many supervised doctor's appointments and hospital

visits. Respondent father involved himself in decisions regarding surgery for Brianna B. and sought second opinions. Respondent mother asked lots of questions of the therapists and social workers, too many at times. The only real gap in visitation occurred November 1999 until March 2000, when respondent parents were not allowed to visit Brianna B. because they did not have flu shots. We find that overall the record clearly shows that respondent parents maintained interest and concern in Brianna B. The State argues that the interest was not "reasonable interest" because respondent father did not get along with caseworkers and respondent mother could not learn to care for Brianna B.

■ The trial court apparently found, considering respondent parents' personal circumstances and the unique problems created by Brianna B.'s medical conditions, that the interest shown by respondent parents was reasonable. We can only overturn the trial court's finding if it is against the manifest weight of the evidence, and a finding is against the manifest weight of the evidence if a review of the record "clearly demonstrates that the proper result is the one opposite that reached by the trial court." *In re M.K.*, 271 Ill. App. 3d 820, 826, 649 N.E.2d 74, 79 (1995). The record does not clearly demonstrate that these parents' interest in Brianna B. was not reasonable under the circumstances, and we therefore affirm this portion of the trial court's ruling.

## B. Reasonable Efforts and Reasonable Progress Within Nine Months of Adjudication

■ The version of section 1(D)(m) of the Adoption Act in effect in July 1999 when the State filed its petition for termination of parental rights had two bases of unfitness:

> "Failure by a parent [(1)] to make reasonable efforts to correct the conditions that were the basis for the removal of the child from the parent, or [(2)] to make reasonable progress toward the return of the child to the parent within 9 months after an adjudication of neglected or abused minor *** or dependent minor ***." 750 ILCS 50/1(D)(m) (West 1998).

The State alleged respondent parents were unfit under both bases.

This court has held that when making a determination under either of these bases, reasonable efforts or reasonable progress, the court may not consider any evidence beyond the statutorily prescribed nine months from the date of the adjudication of neglect. *K.B.*, 314 Ill. App. 3d at 749, 732 N.E.2d at 1206; see also *In re D.L.*, 191 Ill. 2d 1, 727 N.E.2d 990 (2000). The statutory period begins from the date the court files the dispositional order finding the minor neglected. *K.B.*, 314 Ill. App. 3d at 751, 732 N.E.2d at 1208. In this case, the

dispositional order was entered July 30, 1998, which means the court was not allowed to consider any evidence of events that occurred after the end of April 1999. However, the court heard evidence of events through at least March 2000, well beyond the nine-month cutoff.

This court has also held that when the record is unclear whether the trial court examined events outside of the statutory time frame of section 1(D)(m), then the case should be remanded with directions to determine unfitness only by reference to events within the statutory time frame. *In re J.D.*, 314 Ill. App. 3d 1109, 1110, 734 N.E.2d 93, 95 (2000). In this case, the trial court's one-sentence docket entry terminating the State's petition is unclear on the time frame examined by the court. Therefore, we initially remanded for the trial court to review the evidence submitted to determine respondent parents' unfitness only by reference to events within the statutory time frame, counting from the filing of the dispositional order.

In its petition for rehearing, the State argued that an amendment to section 1(D)(m) of the Adoption Act effectively overruled this court in *K.B.* and the Illinois Supreme Court in *In re D.L.*, wherein it was determined that the 9-month limit (12 months under the version of the statute at issue in *In re D.L.*) applied to the reasonable efforts basis as well as the reasonable progress basis. The Illinois Supreme Court directed this court to reconsider our disposition in light of this amendment to the statute.

Effective January 1, 2000, the legislature amended section 1(D)(m) of the Adoption Act to read:

> "Failure by a parent (i) to make reasonable efforts to correct the conditions that were the basis for the removal of the child from the parent, or (ii) to make reasonable progress toward the return of the child to the parent within 9 months after an adjudication of neglected or abused minor *** or dependent minor ***, or (iii) to make reasonable progress toward the return of the child to the parent during any 9-month period after the end of the initial 9-month period following the adjudication of neglected or abused minor *** or dependent minor ***." 750 ILCS 50/1(D)(m) (West 2000).

According to the State, this amendment proves that when making a determination that a parent has not made reasonable efforts to correct the conditions that caused the removal of the child, the court may consider evidence from the day the child is taken from the parents until some unspecified time that is "reasonable" for the particular parents, but still less than nine months from the adjudication of neglect. The State accordingly argues that a court need not wait nine months after the adjudication of neglect before making a ruling of

unfitness (the court did wait more than nine months in this case). In support of this argument, the State cites *dicta* from this court in which we suggested that the phraseology and construction of the amendment to the statute "strongly suggest that the legislature did not intend the nine-month limitation to apply to a reasonable efforts analysis." *In re D.F.*, 317 Ill. App. 3d 461, 464, 740 N.E.2d 60, 63 (2000). If there is no limitation on the time frame from which the court may consider evidence regarding whether respondents in this case had made reasonable efforts to correct the conditions that led to the child's removal, then there is no need for remand to consider evidence within a certain time frame. This court could therefore address the merits of whether the trial court's finding that respondents had made reasonable efforts was against the manifest weight of the evidence.

The First District recently considered the effects of the amendment to section 1(D)(m) of the Adoption Act in a case also titled *In re D.F.*, and determined that the nine-months-from-the-adjudication-of-neglect limit still applies to the reasonable efforts basis. *In re D.F.*, 332 Ill. App. 3d 112, 120, 772 N.E.2d 939, 945-46 (2002). The court reasoned that because the legislature was presumed to know that courts had decided that the nine-month limit applied to the reasonable efforts basis, and because the legislature did not change the substance of the reasonable efforts basis other than to add a "(i)" in front of it, the prior judicial interpretations applying the nine-month limit retain their validity. *D.F.*, 332 Ill. App. 3d at 119, 772 N.E.2d at 945, citing *S.D. v. Kishwaukee Community Hospital*, 288 Ill. App. 3d 472, 477-78, 681 N.E.2d 140, 143-44 (1997).

We find the First District's reasoning in *D.F.* to be sound. The amendment in subsection (iii) added a new basis for finding unfitness and did not affect subsection (i) or (ii) or the courts' interpretation of it. When making a determination of a parent's unfitness on the basis of failure to make reasonable efforts to correct the conditions that were the basis for removal of the child, the court may not consider any evidence beyond the statutorily prescribed nine months from the date of the adjudication of neglect. We therefore remand for the trial court to review the evidence submitted to determine respondent parents' unfitness only by reference to events within the statutory time frame, counting from the filing of the dispositional order.

## C. Unknown Father

■ The requirements for service that must be made on an unknown father before his parental rights may be terminated are found in section 2—16 of the Juvenile Court Act of 1987 (705 ILCS

405/1—1 through 7—1 (West 1998)). The statute provides in pertinent part:

> "(2) Where a respondent's usual place of abode is not known, a diligent inquiry shall be made to ascertain the respondent's current and last known address. \*\*\* If, after diligent inquiry made at any time within the preceding 12 months, the usual place of abode cannot be reasonably ascertained, \*\*\* petitioner's attorney *shall* file an affidavit at the office of the clerk of [the] court in which the action is pending showing that respondent on due inquiry cannot be found or is concealing his or her whereabouts so that process cannot be served. \*\*\* The affidavit *shall* also state what efforts were made to effectuate service." (Emphases added.) 705 ILCS 405/2—16(2) (West 1998).

In this case, the record before us fails to show that the State filed the "due diligence" affidavit with the court. Service on the unknown father was statutorily insufficient. This is a basis for not terminating the unknown father's parental rights, and we therefore affirm that part of the trial court's ruling.

## III. CONCLUSION

We affirm the trial court's ruling that respondent parents did show a reasonable degree of interest in Brianna B. 750 ILCS 50/1(D)(b) (West 1998). We affirm the trial court's decision not to terminate the unknown father's parental rights due to statutorily insufficient service of process. We remand for the trial court to review the evidence submitted to determine respondent parents' unfitness under section 1(D)(m) (750 ILCS 50/1(D)(m) (West 1998)) only by reference to events within the statutory time frame, counting from the filing of the dispositional order.

Affirmed in part and remanded in part with directions.

KNECHT and TURNER, JJ., concur.