*In re* JEFFREY S. *et al.*, Minors (The People of the State of Illinois, Petitioner-Appellee, v. A.S., Respondent-Appellant (J.P., Respondent)).

Second District    No. 2—01—1260

Opinion filed May 23, 2002.

Michael E. Kalland, of Law Offices of Josette Skelnik, of Elgin, for appellant.

Meg Gorecki, State's Attorney, of St. Charles (Martin P. Moltz and Sally A. Swiss, both of State's Attorneys Appellate Prosecutor's Office, of counsel), for the People.

JUSTICE KAPALA delivered the opinion of the court:

The minors' mother, respondent-appellant, A.S., appeals from the judgment of the circuit court of Kane County terminating her parental rights to her two minor children, Jeffrey S. and Jawann P. Respondent argues that the trial court abused its discretion in finding that it was in the best interest of the minor children to terminate her parental rights rather than establish a subsidized guardianship pursuant to section 2—27(1)(a—5) of the Juvenile Court Act of 1987 (705 ILCS 405/2—27(1)(a—5) (West 2000)). We affirm.

## I. FACTUAL BACKGROUND

On May 27, 1998, the minors were adjudicated neglected after A.S. stipulated that the State could present sufficient evidence to show that the minors were living in an injurious environment. The case was continued for 18 months under court supervision. On January 15, 1999, the State filed a second petition for adjudication of wardship, alleging that the minors were neglected. On January 19, 1999, the trial court placed the minors into emergency shelter care after the minors were left alone without supervision and A.S. refused to cooperate with the Illinois Department of Children and Family Services (DCFS) in developing a safety and care plan. On March 9, 1999, the minors were adjudicated neglected for the second time after A.S. stipulated that the State could present sufficient evidence to show that the minors were left alone without supervision for an unreasonable amount of time without regard for their mental or physical health, safety, or welfare (705 ILCS 405/2—3(1)(b) (West 1998)) and that she had failed to cooperate with DCFS in developing a safety and care plan. On April 13, 1999, the trial court entered a dispositional order with the permanency goal of returning the minors to their home.

On March 27, 2000, the State filed a motion for the termination of parental rights, alleging that A.S. was an unfit person because (1) she failed to make reasonable efforts to correct the conditions that were the basis for removal of the minors or to make reasonable progress toward the return of the minors to her within nine months after the adjudication of neglect (750 ILCS 50/1 D(m) (West 1998)); and (2) she was unable to discharge parental responsibilities, as supported by competent evidence from a psychiatrist, licensed clinical social worker, or clinical psychologist of mental impairment, mental illness, mental retardation, or developmental disability, and there was sufficient justification to believe that the inability to discharge parental respon-

sibilities would extend beyond a reasonable period of time (750 ILCS 50/1 D(p) (West 1998)). The motion also alleged that the minors' father, J.P., was an unfit person.

On August 3, 2001, the fitness portion of the proceedings to terminate parental rights began, and A.S. was present in court with her attorney. The hearing resumed on September 13 and 14, 2001. A.S. failed to appear on both dates. On September 27, 2001, the trial court took further evidence. In the morning session A.S. was present in court, but she was not in court for the afternoon session. The trial court found that A.S. was an unfit person as alleged in the motion for termination of parental rights. Subsequently, the trial court found that the State failed to prove that the minors' father was an unfit person.

The best interest hearing commenced on October 21, 2001. At that time Jeffrey S. was five years old and Jawann P. was almost four years old. The State called Kerri Mackowiak, a caseworker employed by Catholic Charities, who testified that she had been working with A.S. since 1996. Mackowiak indicated that when the minors were taken into shelter care in January 1999, they were placed with the paternal grandmother of one of A.S.'s older children. The minors were placed with their foster mother in February 2000. Mackowiak said that the minors had been in their foster mother's continuous care since that time.

Mackowiak further testified that she visited with the minors in their foster home monthly and indicated that they have adjusted well. Mackowiak explained that the minors were very content and comfortable in their foster home and had bonded with their foster mother and the other children in that home. Mackowiak said that the minors have friends in the neighborhood. Mackowiak also indicated that the minors sometimes referred to their foster mother by her first name and other times called her "Mom." Mackowiak said that the minors call their foster home "home" and do not call A.S.'s residence "home." According to Mackowiak, it was the foster mother's intention to adopt the minors but she would keep the minors even if they were not available for adoption.

Mackowiak indicated that the minors have monthly supervised visits with A.S. Mackowiak said that the case aides who supervised the visits indicated that there was no bond between the minors and A.S. Mackowiak also said that, during visits, A.S. brought individuals with her who were not cleared by DCFS. Mackowiak explained that the minors were quiet and solitary during visits with A.S. and that the minors did not inquire about A.S. between visits. Mackowiak also testified that the minors became withdrawn after visits with A.S.

Mackowiak said that A.S. told the minors that she loved them at visits but also called them bad names.

Mackowiak recommended that A.S.'s parental rights be terminated and that the minors remain in their foster placement. Mackowiak testified that she did not believe that the minors would benefit from continued contact with A.S.

The foster mother testified that the minors have been living with her since February 12, 2000. The foster mother indicated that the minors initially had behavior problems but have improved over time. According to the foster mother, the minors call her by her first name or "Mom." The minors get along well with the other children in the home. The minors have four or five friends on their block. The foster mother said that she would like to give the minors a permanent home for as long as they need one. The foster mother testified that the minors are quiet and misbehave after visits with A.S. The minors call A.S. by her nickname. According to the foster mother, the minors have never requested a visit with A.S. nor have they refused to visit with her. The minors, on occasion, drew pictures for A.S. and brought them to her at their visits.

A.S. testified that she was 24 years old at the time of the best interest hearing. A.S. related that, even though the court had determined that the minors could not live with her, she wanted to continue to see them. A.S. said that she loves the minors and wants to see them grow up. A.S. also said that her mother, step-dad, and two brothers also love the minors and want to see them. A.S. testified that she got upset when her visits with the minors were reduced to once a month. When A.S. sees the minors at visits she gets excited, gives them hugs and kisses, and tells them that she loves them. When the visits are over, A.S. hugs and kisses the minors and then turns around so that the minors will not see her cry.

After the close of evidence, A.S.'s counsel argued that the State had not shown that it was in the minors' best interest to terminate A.S.'s parental rights but, rather, the evidence established that a subsidized guardianship should be granted to the minors' foster mother. The guardian *ad litem* and the assistant State's Attorney recommended the termination of A.S.'s parental rights so that the minors could have an opportunity to live with the foster mother permanently.

After hearing argument from the parties, the trial court found that it was in the minors' best interest to terminate A.S.'s parental rights. The trial court made the following remarks in ruling:

> "Adoption is the preferred statutory goal over guardianship. That has been set out by the legislature and I believe that codifies com-

mon sense in that it is preferable to allow children the permanency of a permanent home and permanent relationships as opposed to guardianship, which is a less permanent structure, nature, and setting.

\* \* \*

I do not believe that the best interest of the children has to be determined on whether or not they are psychologically harmed by seeing their mother or physically harmed. I believe that the issue is[,] is it in their continued best interest to maintain a relationship and to deny them an opportunity for any type of permanence in the future should that opportunity arise? Based on all the factors as presented, and I would state that there have been some periods of good visitation with mom, there have been periods of visitation that [have] not been good or productive, but it is the very unpredictability of the relationship which I do not believe would be in the best interests of the children to gamble on to preserve in the future.

Based on the totality of all of the information as presented and the statutory factors as enumerated within the Juvenile Court Act, I do believe applying the discretion of the Court allowed in this area, that the best interests of the children does lie in terminating the parental rights of [A.S.]."

A.S. timely appeals.

## II. DISCUSSION

■ Under the Juvenile Court Act of 1987 (the Act) (705 ILCS 405/1—1 et seq. (West 1998)), the involuntary termination of parental rights involves a two-step process. First, there must be a showing, based on clear and convincing evidence, that the parent is an "unfit person," as defined in section 1(D) of the Adoption Act (750 ILCS 50/1(D) (West 1998)). If the court makes a finding of unfitness, the court then considers whether it is in the best interest of the child that parental rights be terminated. See 705 ILCS 405/2—29(2) (West 1998).

The only issue A.S. raises on appeal is whether the trial court abused its discretion in finding that it was in the minors' best interest to terminate A.S.'s parental rights rather than establish a subsidized guardianship. A.S. requests that we reverse the trial court's order terminating her parental rights and remand the cause with instructions to establish a subsidized guardianship for the children.

■ Once a parent has been proved unfit by clear and convincing evidence, the decision to terminate an individual's parental rights rests within the sound discretion of the trial court, and the reviewing court should not interfere with its judgment absent an abuse of discretion. *In re M.S.*, 302 Ill. App. 3d 998, 1003 (1999).

■ When determining whether the termination of parental rights is in a child's best interest, the following factors are considered in the context of the child's age and developmental needs: (1) the physical safety and welfare of the child, including food, shelter, health, and clothing; (2) the development of the child's identity; (3) the child's background and ties, including familial, cultural, and religious; (4) the child's sense of attachments; (5) the child's wishes and long-term goals; (6) the child's community ties, including church, school, and friends; (7) the child's need for permanence, which includes the child's need for stability and continuity of relationships with parent figures and with siblings and other relatives; (8) the uniqueness of every family and child; (9) the risks attendant to entering and being in substitute care; and (10) the preferences of the persons available to care for the child. 705 ILCS 405/1—3(4.05) (West 1998).

A.S. argues that the trial court did not analyze these statutory factors in rendering its decision. However, in ruling at the best interest hearing, the trial court specifically stated that it considered the statutory factors.

■ A.S. contends that no evidence demonstrates that the minors would be better off if they discontinued visiting with her or that such visits were not beneficial to the minors. A.S. contends further that the trial court abused its discretion when it found that it was in the minors' best interest to terminate her parental rights rather than order a subsidized guardianship where the minors would benefit from continued contact with her. We disagree.

Section 2—27(1) of the Act provides in pertinent part:

"If the court determines and puts in writing the factual basis supporting the determination of whether the parents, guardian, or legal custodian of a minor adjudged a ward of the court are unfit or are unable, for some reason other than financial circumstances alone, to care for, protect, train or discipline the minor or are unwilling to do so, and that the health, safety, and best interest of the minor will be jeopardized if the minor remains in the custody of his or her parents, guardian or custodian, the court may at this hearing and at any later point:

\*\*\*

(a—5) with the approval of the Department of Children and Family Services, place the minor in the subsidized guardianship of a suitable relative or other person as legal guardian; 'subsidized guardianship' means a private guardianship arrangement for children for whom the permanency goals of return home and adoption have been ruled out and who meet the qualifications for subsidized guardianship as defined by the Department of Children and Family Services in administrative rules[.]" 705 ILCS 405/2—27(1)(a—5) (West 1998).

■ In this case, there was no evidence that DCFS had approved a subsidized guardianship or that the minors met the qualifications for subsidized guardianship as defined by DCFS administrative rules. The trial court can order a subsidized guardianship only when the options of return home and adoption have been ruled out. 705 ILCS 405/2—27(1)(a—5) (West 1998). Here, the father's parental rights are intact and, therefore, he potentially could regain custody of the minors in the future. Adoption is also a possibility in light of the fact that the foster mother has provided a stable and loving home for the minors for over two years and has expressed a desire to adopt the minors should they become available for adoption at some point. Accordingly, the trial court did not err in failing to order a subsidized guardianship.

■ The evidence substantiates the minors' need for permanency and stability and establishes that the permanency goals of return home and adoption, both of which are statutorily preferred to a subsidized guardianship, remain viable. At the same time, the evidence confirms that A.S. is unable to meet the minors' needs.

In light of the above evidence, we conclude that the trial court did not abuse its discretion in finding that it was in the children's best interest to terminate A.S.'s parental rights (*In re M.S.*, 302 Ill. App. 3d at 1003).

## III. CONCLUSION

For the foregoing reasons, the judgment of the circuit court of Kane County is affirmed.

Affirmed.

McLAREN and BYRNE, JJ., concur.