*In re* JACIEN B., a Minor (The People of the State of Illinois, Petitioner-Appellee, v. Teresa N.-S. *et al.*, Respondents-Appellants).—*In re* JACIEN B., a Minor (The People of the State of Illinois, Petitioner-Appellee, v. Jason B., Respondent-Appellant).

Second District   Nos. 2—03—0018, 2—03—0030 cons.

Opinion filed July 18, 2003.

GILLERAN JOHNSON, J., dissenting.

Kathryn Bischoff, of Rockford, for appellant Teresa N.S.

Donald P. Sullivan, of Rockford, for appellant Jason B.

Paul A. Logli, State's Attorney, of Rockford (Martin P. Moltz, of State's Attorneys Appellate Prosecutor's Office, of counsel), and Paul Benjamin Linton, of Northbrook, for the People.

JUSTICE GROMETER delivered the opinion of the court:
In this consolidated appeal, respondent mother, Teresa N.-S., and respondent father, Jason B., appeal from the January 3, 2003, order of the circuit court of Winnebago County terminating their parental rights to their daughter, Jacien B. In appeal No. 2—03—0018, Teresa argues that (1) the trial court's finding of unfitness was against the manifest weight of the evidence and (2) the trial court abused its discretion in finding that it was in the minor's best interests to terminate her parental rights. In appeal No. 2—03—0030, Jason argues that the trial court abused its discretion in finding that it was in the minor's best interest to terminate his parental rights. With respect to appeal No. 2—03—0018, we reverse the judgment of the trial court and remand the cause for further proceedings. With respect to appeal No. 2—03—0030, we affirm the judgment of the trial court.

I. BACKGROUND
On March 12, 1999, Teresa gave birth to Jacien. Paternity tests

revealed that Jason is Jacien's biological father. At the time of Jacien's birth, Teresa tested positive for the presence of cocaine. Jacien tested negative for the presence of drugs. On March 17, 1999, the State filed a four-count petition alleging that Jacien was a neglected minor pursuant to section 2—3 of the Juvenile Court Act of 1987 (Juvenile Court Act) (705 ILCS 405/2—3 (West 1998)). Respondents waived their right to a hearing on whether probable cause existed that Jacien was neglected. The trial court then placed Jacien in the temporary custody of the Department of Children and Family Services (DCFS).

On August 4, 1999, the trial court conducted an adjudicatory hearing at which Teresa stipulated to two counts of the neglect petition. Specifically, Teresa stipulated to count I, which alleged that she tested positive for cocaine at Jacien's birth, and to count III, which alleged that one of Jacien's siblings was adjudicated a neglected minor because he was born cocaine-exposed. The State dismissed the remaining counts. Following a dispositional hearing on November 1, 1999, Jacien was made a ward of the court and placed in the custody and guardianship of DCFS. The dispositional order directed respondents to cooperate with all drug, alcohol, and domestic violence services required by DCFS.

On February 24, 2000, the State filed a motion seeking the termination of the parental rights of Teresa and Jason to Jacien and the appointment of a guardian with the power to consent to the minor's adoption. The State subsequently moved to dismiss this motion. However, on August 25, 2000, the State filed the motion at issue in this appeal. The motion contained three counts of unfitness with respect to Teresa, including an allegation that she violated section 1(D)(m) of the Adoption Act (750 ILCS 50/1(D)(m) (West 2000)) in that she "failed to make reasonable efforts to correct the conditions that were the basis for the removal of the child from her, or to make reasonable progress toward the return of the child to her within nine (9) months after an adjudication of neglect." The motion also alleged that Jason was unfit to have a child on three grounds, including a violation of section 1(D)(m).

The unfitness phase of the hearing was held over several dates between June 5, 2002, and December 18, 2002. Among those witnesses who testified at the hearing were Teresa, Jason, the DCFS caseworker assigned to Jacien's case, and Teresa's substance-abuse counselor. At the hearing, the court learned that both Teresa and Jason were convicted of drug-related offenses arising from an incident occurring in June 2000. Apparently, the arrests occurred within 24 hours of the date that Teresa completed substance-abuse treatment. At the time of the hearing, Teresa was still incarcerated but was expected to be

released in March 2003. Jason was released from prison in April 2002. At the conclusion of the unfitness phase of the hearing, the trial court found Teresa to be an unfit parent. Specifically, the court remarked:

"[T]he Court finds *** that the State has met its burden of proof and has demonstrated by clear and convincing evidence that *** Teresa *** [is] an unfit person to have this child *** in that [she has] failed to make reasonable efforts to correct the conditions that were the basis for the removal of the child from [her] or to make reasonable progress towards the return of the child to [her] within nine months after the adjudication of the child as a neglected minor.

The disposition/adjudication date was November the 1st of the year 1999. The nine-month period ran August the 1st of the year 2000. Clearly within that period of time [Teresa was] actively selling and manufacturing drugs, except for the period of time when [she was] in jail; and clearly that does not constitute reasonable efforts. [She] was living a charade, trying to pull one over on everyone."

The court also found Jason to be an unfit parent on the basis that he "failed to make reasonable efforts to correct the conditions that were the basis for the removal of the child from him or to make reasonable progress towards the return of the child to him within nine months after the adjudication of the child as a neglected minor." The matter then proceeded to the best-interest phase of the hearing.

During the best-interest phase, the State first called Renee Small, the DCFS adoption worker assigned to Jacien's case. Small testified that since Jacien was discharged from the hospital after her birth, she has resided with Pat E. in a DCFS foster home. According to Small, Jacien is doing well. The minor relates to Pat as a parent, refers to Pat as "mom," and seeks Pat to meet her needs and provide affection. Small stated that Pat is very involved in therapy sessions Jacien attends. In fact, Small received a letter from one of Jacien's doctors detailing how active Pat was and how her participation has helped Jacien progress.

Small noted that Jacien has been in the system for more than three years and that it is important for her to have permanency. Small pointed out that Jacien has resided with Pat since birth, she has made "incredible progress" in her placement, and there is a strong attachment between Pat and Jacien. Small offered that Pat appears to be financially secure and that Jacien will qualify for an adoption subsidy through DCFS if she is adopted. Small opined that Jacien will continue to thrive in this environment and that allowing Jacien to remain in her current environment is the best way for the minor to achieve permanency. Small concluded that it is in Jacien's best interest to be

freed for adoption. On cross-examination, Small acknowledged that Pat is 66 years old. However, she offered that Pat is healthy, that she has been able to meet Jacien's needs, and that Pat and Jacien have a very strong attachment.

Teresa testified that she loves Jacien and that she would refrain from engaging in criminal activity once she is released from prison. Teresa testified that upon her release from prison, she plans to reside with her mom and look for work. Eventually she intends to find her own place. Teresa testified that she has been diagnosed with a bipolar disorder. However, she believed that she will be able to care for Jacien when she (Teresa) is released from prison. She expects to seek substance-abuse treatment and mental health counseling upon her release. She also plans to continue her relationship with Jason as long as he follows the recommendations of DCFS and his parole officer.

Following closing arguments by the parties, the court determined that it would be in Jacien's best interest that respondents' parental rights be terminated. The trial court found that Jacien was physically safe and well cared for by Pat. The court pointed out that Jacien had been residing with Pat since Jacien had been released from the hospital, that the minor had established a bond with Pat, and that Pat has satisfied Jacien's emotional and physical needs. The court noted that Jacien has never had a close, loving relationship with Teresa or Jason and that the minor does not recognize Teresa and Jason as her parents or her family. The court observed that Jacien was approaching four years of age and deserved permanency. The court concluded that Jacien deserved to remain in Pat's home where she is loved, cared for, and nurtured and can achieve permanency. Respondents appealed.

## II. ANALYSIS

The Juvenile Court Act of 1987 provides a bifurcated procedure to determine whether a parent's rights should be terminated. 705 ILCS 405/2—29(2) (West 2000). First, the court must find by clear and convincing evidence that the parent is "unfit" as that term is defined in section 1(D) of the Adoption Act (750 ILCS 50/1(D) (West 2000)). *In re Adoption of Syck*, 138 Ill. 2d 255, 277 (1990); *In re Jeffrey S.*, 329 Ill. App. 3d 1096, 1101 (2002). If the parent is found unfit, the court must then determine whether the termination of parental rights would serve the child's best interests. *Syck*, 138 Ill. 2d at 277; *Jeffrey S.*, 329 Ill. App. 3d at 1101. In this case, Teresa challenges the trial court's findings with respect to both phases of the termination proceeding while Jason challenges only the trial court's finding regarding the best-interest phase. We address Teresa's arguments first.

### A. Appeal No. 2—03—0018

The trial court determined that Teresa was unfit on the grounds

that she failed to make reasonable efforts to correct the conditions that were the basis for Jacien's removal from Teresa and that she failed to make reasonable progress toward the return of the child within nine months after the adjudication of neglect. 750 ILCS 50/1(D)(m) (West 2000). According to Teresa, the trial court's finding was against the manifest weight of the evidence. Teresa asserts that the nine-month period from which "reasonable efforts" and "reasonable progress" are to be measured begins on the date of the dispositional order, in this case November 1, 1999. Teresa acknowledges that, during this time period, she was convicted of a drug-related offense. However, she offers that she also completed substance-abuse treatment, attended Alcoholics Anonymous/Narcotics Anonymous meetings, and participated in domestic violence classes. The State simply argues that based on Teresa's pattern of conduct during the nine-month period following the trial court's dispositional order (November 1, 1999, through August 1, 2000), the trial court's decision was not against the manifest weight of the evidence.

■ Section 1(D) of the Adoption Act defines the term "unfit person" and lists various grounds upon which a person may be found to be unfit to have a child. 750 ILCS 50/1(D) (West 2000). Relevant here is section 1(D)(m) (750 ILCS 50/1(D)(m) (West 2000)), the provision under which the trial court found Teresa unfit to have a child. That provision lists the following bases upon which a finding of unfitness may rest:

> "(m) Failure by a parent (i) to make reasonable efforts to correct the conditions that were the basis for the removal of the child from the parent, or (ii) to make reasonable progress toward the return of the child to the parent within 9 months after an adjudication of neglected or abused minor under Section 2—3 of the Juvenile Court Act of 1987 or dependent minor under Section 2—4 of that Act, or (iii) to make reasonable progress toward the return of the child to the parent during any 9-month period after the end of the initial 9-month period following the adjudication of neglected or abused minor under Section 2—3 of the Juvenile Court Act of 1987 or dependent minor under Section 2—4 of that Act." 750 ILCS 50/1(D)(m) (West 2000).

The nine-month period identified in section 1(D)(m)(ii) also applies to the "reasonable efforts" ground in section 1(D)(m)(i) of the statute. *In re D.L.*, 191 Ill. 2d 1, 10 (2000) (holding that the then 12-month limitations period in section 1(D)(m) applied to both the "reasonable efforts" and "reasonable progress" grounds); *In re D.F.*, 332 Ill. App. 3d 112, 118-20 (1st Dist. 2002), *appeal allowed*, 203 Ill. 2d 547 (2003) (concluding that the 2000 amendment to section 1(D)(m) did not

render uncertain the supreme court's interpretation of the statute in *D.L.*; amendment did not substantively change language interpreted by the supreme court but merely added lower case roman numerals and an additional ground of unfitness); see also *In re Brianna B.*, 334 Ill. App. 3d 651, 658 (4th Dist. 2002) (adopting First District's reasoning in *D.F.*). Identifying the appropriate time frame is critical because, as our supreme court observed in *D.L.*, section 1(D)(m) limits the evidence that may be considered in measuring "reasonable efforts" and "reasonable progress" to those matters concerning the parent's conduct during the relevant time span outlined in the statute. *D.L.*, 191 Ill. 2d at 10.

We find that the parties, as well as the trial court below, incorrectly used the date of the dispositional order (November 1, 1999) as the starting date for calculating the nine-month period during which "reasonable efforts" and "reasonable progress" are to be measured. We conclude that it is the date of adjudication of neglect, in this case August 4, 1999, that commences the applicable nine-month period. As a result, we reverse and remand this cause for further proceedings.

In *In re Christopher J.*, 338 Ill. App. 3d 1057 (2003), we were asked to determine when the nine-month period referred to in section 1(D)(m) (750 ILCS 50/1(D)(m) (West 2000)) begins to run. At that time, we declined to address the issue on the basis of waiver. *Christopher J.*, 338 Ill. App. 3d at 1058. However, the First and Fourth Districts of this appellate court have recently examined this issue, albeit with differing results. In *In re D.S.*, 313 Ill. App. 3d 1020 (2000), the Fourth District concluded that the statutory time period referred to in section 1(D)(m) begins to run on the date the court files its dispositional order on the State's petition of neglect, abuse, or dependency. The court reasoned that the filing of the dispositional order "completes the adjudication, renders it final, and gives rise to the right to appeal the adjudication of neglect, abuse, or dependency." *D.S.*, 313 Ill. App. 3d at 1028. The court also stated that had the legislature intended the time period to begin on the date of the trial court's finding of neglect, abuse, or dependency at the adjudicatory hearing, it would have so specified as it did in section 1(D)(m—1) of the *Adoption Act* (750 ILCS 50/1(D)(m—1) (West 2000) ("the date of entering foster care is the earlier of: (i) the date of a judicial finding at an adjudicatory hearing that the child is an abused, neglected, or dependent minor; or (ii) ***")). *D.S.*, 313 Ill. App. 3d at 1028-29.

The Fourth District acknowledged that in *D.L.*, 191 Ill. 2d at 4, 13, the supreme court used the date of the adjudication of neglect as commencing the relevant time period. *D.S.*, 313 Ill. App. 3d at 1026. However, the Fourth District declined to use the date of adjudication,

suggesting that the supreme court's reference in *D.L.* to the date of adjudication of neglect was *dicta* because the supreme court was not expressly asked to determine the date from which the nine-month time period begins to run. *D.S.*, 313 Ill. App. 3d at 1027.

In contrast, in *In re D.F.*, 332 Ill. App. 3d 112, the First District interpreted the plain language of section 1(D)(m) to require the relevant time period for measuring "reasonable efforts" or "reasonable progress" to commence on the date the court adjudicates the minor neglected, abused, or dependent. *D.F.*, 332 Ill. App. 3d at 122. Specifically, the court pointed out that the statute expressly provides that the nine-month period begins after the " 'adjudication of neglected or abused minor under Section 2—3 of the Juvenile Court Act of 1987 or dependent minor under Section 2—4 of that Act.' " *D.F.*, 332 Ill. App. 3d at 122, quoting 750 ILCS 50/1(D)(m) (West 2000). The court found additional support for its position by examining various provisions of the Juvenile Court Act. *D.F.*, 332 Ill. App. 3d at 122-23. For instance, the court pointed out that, by definition, it is at the adjudicatory hearing, not the dispositional hearing, that the trial court determines whether a minor is abused, neglected, or dependent. See 705 ILCS 405/1—3(1) (West 2000) (defining "adjudicatory hearing"); 705 ILCS 405/1—3(6) (West 2000) (defining "dispositional hearing"); 705 ILCS 405/2—22(1) (West 2000) ("At the dispositional hearing, the court shall determine whether it is in the best interests of the minor and the public that he be made a ward of the court ***"). The court reasoned that had the legislature intended the nine-month period to commence on the date of the dispositional hearing, it would have stated that the time period begins after the adjudication of the minor as a ward of the court. *D.F.*, 332 Ill. App. 3d at 123.

The *D.F.* court disagreed with the Fourth District's suggestion that the supreme court's reference in *D.L.* to the date of adjudication was *dicta*. The court pointed out that while the supreme court was not expressly asked to determine the proper start date of the relevant time period, such information was necessary to the resolution of the issue presented in *D.L. D.F.*, 332 Ill. App. 3d at 124. The First District also observed that the use of the date of adjudication, as opposed to the date of the dispositional order, furthers one of the primary purposes of the statutory scheme: it expedites issues relating to the custody of minors. *D.F.*, 332 Ill. App. 3d at 124.

■ ■ We find the reasoning of the *D.F.* court more persuasive than the reasoning in *D.S.* Section 1(D)(m) defines a parent as unfit if, among other things, he or she fails to make within the relevant time period either (1) reasonable efforts to correct the conditions that were the basis for the removal of the child from the parent or (2) reason-

able progress toward the return of the child. 750 ILCS 50/1(D)(m) (West 2000). The relevant time period in the statute is "9 months after an adjudication of neglected or abused minor *** or dependent minor." 750 ILCS 50/1(D)(m) (West 2000). Thus, the plain language of the statute clearly requires the court to assess the parent's progress for the nine-month period beginning on the date a minor is adjudicated neglected, abused, or dependent, that is, the date of the adjudicatory hearing. Moreover, we agree with the court in *D.F.* that this interpretation serves an important purpose by expediting issues relating to the custody of minors. Further, as the *D.F.* court observed, our supreme court implicitly adopted the date of adjudication of neglect as the starting point to measure the nine-month period in section 1(D)(m). Because the trial court in this case used the date of disposition, rather than the date of adjudication of neglect, we must reverse the trial court's finding of unfitness with respect to Teresa and remand the cause to the trial court to reassess whether Teresa was unfit for failure to make "reasonable efforts" or "reasonable progress" during the nine-month time period commencing on the date that Jacien was adjudicated a neglected minor.

We are cognizant that neither Teresa nor the State has raised this issue in their briefs. However, we are not required to ignore errors of law which the parties on appeal either overlook or decline to address. *In re Marriage of Plymale*, 172 Ill. App. 3d 455, 460 (1988) (supplemental opinion on denial of rehearing). The termination of parental rights is an extraordinary measure, given the superior rights of parents against the rights of others to raise their children. *In re T.D.*, 268 Ill. App. 3d 239, 245 (1994). Given the importance of the decision involved herein and the fact that there is a conflict among the districts of this court on this issue, we conclude that it is appropriate to render our decision on a basis not identified by the parties. See *Hux v. Raben*, 38 Ill. 2d 223, 224-25 (1967).

## B. Appeal No. 2—03—0030

■ Jason argues only that it is not in Jacien's best interest that his parental rights be terminated. As noted above, once a parent has been proved unfit to have a child by clear and convincing evidence, the proceeding moves to the best-interest phase. During this phase, the parent's rights must yield to the child's best interest. *In re Tashika F.*, 333 Ill. App. 3d 165, 170 (2002). The termination of parental rights based on a child's best interest rests within the sound discretion of the trial court and will not be disturbed on appeal absent an abuse of the trial court's discretion. *In re Precious W.*, 333 Ill. App. 3d 893, 902 (2002); *Jeffrey S.*, 329 Ill. App. 3d at 1101.

■ In this case, the evidence at the best-interest phase of the hearing established that Jacien and Jason never had a close relationship. In contrast, Jacien has developed a close, loving relationship with Pat, the foster mother with whom Jacien was placed when she was discharged from the hospital after her birth. Jacien relates to Pat as a parent, refers to her as "mom," and seeks Pat to meet her needs and provide affection. Jacien's adoption worker, Small, testified that Jacien has made "incredible progress" in her placement, there is a strong attachment between Pat and Jacien, and Pat appears to be financially secure. Small opined that Jacien will continue to thrive in this environment and that allowing Jacien to remain with Pat is the best way for the minor to achieve permanency. Small concluded that it is in Jacien's best interest to be freed for adoption. The trial court concluded that Jacien deserved permanency. Based on this evidence, we cannot say that the trial court abused its discretion.

Nevertheless, Jason asserts that "nothing was gained by severing [his] ties to Jacien and a loving relationship was lost." We disagree. Up to this point in her life, Jacien has lacked a permanent home. The trial court's decision considers Jacien's interests and allows her to gain a stable and permanent place to live. Jason also suggests that he could provide Jacien with a male role model, which Jacien's life would lack if she were adopted by Pat E. However, even assuming that Pat E. is unmarried, as Jason suggests, there is no reason to believe that Pat E.'s male relatives or friends have not, will not, or cannot provide Jacien with the type of support Jason assumes is missing from Jacien's life. Accordingly, we reject Jason's assertion.

## III. CONCLUSION

For the reasons stated above, we reverse the judgment of the circuit court of Winnebago County and remand the cause in case No. 2—03—0018 and affirm the judgment of the circuit court of Winnebago County in case No. 2—03—0030.

No. 2—03—0018, Reversed and remanded.

No. 2—03—0030, Affirmed.

BYRNE, J., concurs.

JUSTICE GILLERAN JOHNSON, dissenting:

I respectfully dissent. I disagree with the majority's interpretation of section 1(D)(m) of the Adoption Act to the extent that it interprets the nine-month time period as applicable to the "reasonable efforts"

ground of parental unfitness. In interpreting the statute otherwise, I believe that the record supports the trial court's finding that Teresa was an unfit parent.

This dissent is guided by the cardinal rule of statutory construction, which is to give effect to the true intent and meaning of the legislature. See *In re D.D.*, 196 Ill. 2d 405, 418 (2001). When determining legislative intent, the starting point is always the language of the statute because the language is the most reliable indicator of the legislature's objectives in enacting the particular law. *D.D.*, 196 Ill. 2d at 419. With that in mind, section 1(D)(m) of the Adoption Act, which was amended effective January 1, 2000, states that the following are grounds for parental unfitness:

"(m) Failure by a parent (i) to make reasonable efforts to correct the conditions that were the basis for the removal of the child from the parent, or (ii) to make reasonable progress toward the return of the child to the parent within 9 months after an adjudication of neglected or abused minor ***, or (iii) to make reasonable progress toward the return of the child to the parent during any 9-month period after the end of the initial 9-month period following the adjudication of neglected or abused minor ***." 750 ILCS 50/1(D)(m) (West 2000).

Clearly, this current version of the statute sets forth three separate and distinct grounds upon which parental rights may be terminated. The second and the third grounds specify a time period. Notably, the first ground, the reasonable efforts ground, does not. It follows then that there is no set time limitation that is applicable to this ground. Rather, the time period for the reasonable efforts ground is that which is reasonable to correct the conditions that were the basis for the minor's removal.

In this case, the record reveals that Teresa did not make reasonable efforts within a reasonable time to correct the conditions that were the basis of Jacien's removal. Indeed, after Jacien was removed from her custody, Teresa continued to use, sell, and manufacture drugs for over six months until she was finally incarcerated. Accordingly, I do not believe that the trial court erred in finding Teresa an unfit parent.

The majority's reliance on *In re D.L.*, 191 Ill. 2d 1 (2000), is unpersuasive. As the majority points out, in *D.L.*, the supreme court interpreted the 1994 version of section 1(D)(m) of the Adoption Act (750 ILCS 50/1(D)(m) (West 1994)). In doing so, the *D.L.* court held that the time limitation period in section 1(D)(m) was applicable to both the reasonable efforts and reasonable progress grounds. *D.L.*, 191 Ill. 2d at 10. However, the legislature's recent amendment substan-

tively changed the language interpreted by the supreme court. Specifically, the legislature changed the time limitation from 12 months to 9, added a third ground of unfitness with its own time limitation period, and added roman numerals to separate each ground. See 750 ILCS 50/ 1(D)(m) (West 2000).

Additionally, the majority's interpretation runs afoul of several well-established rules of statutory construction. Particularly, the majority's interpretation seemingly ignores the roman numerals that the legislature added to separate each ground of unfitness. Statutes should be read so as to yield logical and meaningful results and to avoid constructions that render specific language meaningless surplusage. *McNamee v. Federated Equipment & Supply Co.*, 181 Ill. 2d 415, 423 (1998). The majority's interpretation also stands in contravention of the last antecedent rule. The last antecedent rule of statutory construction requires that relative or qualifying words, phrases, or clauses are to be applied to the words immediately preceding and do not modify words which are more remote. *Swank v. Department of Revenue*, 336 Ill. App. 3d 851, 857 (2003). Under this rule, the phrase "within 9 months after an adjudication of neglected or abused minor" is applicable to the immediately preceding reasonable progress ground and not the more remote reasonable efforts ground.

Accordingly, for the above reasons, I believe that the trial court properly found Teresa an unfit parent. I therefore would affirm the trial court's order terminating her parental rights to Jacien.