NOTICE
Decision filed 10/18/24. The text of this decision may be changed or corrected prior to the filing of a Petition for Rehearing or the disposition of the same.

2024 IL App (5th) 240761-U

NOS. 5-24-0761, 5-24-0762 cons.

IN THE

APPELLATE COURT OF ILLINOIS

FIFTH DISTRICT

NOTICE
This order was filed under Supreme Court Rule 23 and is not precedent except in the limited circumstances allowed under Rule 23(e)(1).

_____

| | | |
|---|---|---|
| *In re* SOREN P. and ZOEY P., Minors | ) | Appeal from |
| | ) | Circuit Court of |
| (The People of the State of Illinois, | ) | Wabash County. |
| | ) | |
| Petitioner-Appellee, | ) | |
| | ) | |
| v. | ) | Nos. 21-JA-11, 21-JA-12 |
| | ) | |
| Monyck O., | ) | Honorable |
| | ) | William C. Hudson, |
| Respondent-Appellant). | ) | Judge, presiding. |

_____

JUSTICE McHANEY delivered the judgment of the court.
Justices Moore and Barberis concurred in the judgment.

**ORDER**

¶ 1    *Held*:    Evidence amply supported the circuit court's findings that respondent was unfit and that the minors' best interests required terminating her parental rights. As any contrary argument would be frivolous, we allow appointed counsel to withdraw and affirm the circuit court's judgment.

¶ 2    Respondent, Monyck O., appeals the circuit court's orders finding her an unfit parent and terminating her parental rights to Soren P. and Zoey P. Her appointed appellate counsel concludes that there is no meritorious issue that could support an appeal. Accordingly, she has filed a motion to withdraw as counsel, along with a supporting memorandum. See *Anders v. California*, 386 U.S. 738 (1967). Counsel has notified respondent of this motion, and this court has provided her with ample opportunity to respond. However, she has not done so. After considering the record on appeal and counsel's motion and supporting memorandum, we agree that there is no issue that

1

could support an appeal. Accordingly, we grant counsel leave to withdraw and affirm the circuit court's judgment.

¶ 3                                    BACKGROUND

¶ 4      On August 13, 2021, Department of Children and Family Services (DCFS) investigator Luke Norris responded to a hotline call that respondent had left her children with a caregiver and had not picked them up as planned. The caller said that she had done this multiple times. She was also suspected of substance abuse and of engaging in violence in her home. Norris spoke to respondent, who advised him that she had not used methamphetamine since November 2020. However, on August 16, 2021, at Norris's request, respondent took a drug test, which was positive for amphetamines and methamphetamine.

¶ 5      As a result, on August 24, 2021, the State filed a petition for adjudication of wardship alleging that respondent and Zachary P., the children's father, neglected the minors when respondent cared for them while under the influence of amphetamines and methamphetamines. The State also petitioned for temporary custody of the children.

¶ 6      At the shelter care hearing, Norris testified that he established a safety plan requiring respondent to take drug tests for three consecutive weeks. However, on August 23, 2021, she refused to take a test. Norris further stated that respondent and her current boyfriend had a history of domestic violence. The trial court found an immediate and urgent necessity to remove the children from the home and granted temporary custody to DCFS.

¶ 7      Following an adjudicatory hearing at which respondent did not appear, the court reviewed the reports and found the minors neglected. The initial service plan required respondent to complete a substance abuse assessment and residential drug treatment, and to submit to drug tests

2

as requested. She was also required to complete a parenting class. Respondent was rated unsatisfactory for all tasks in the original plan.

¶ 8    At a May 31, 2022, permanency hearing, respondent agreed to an order finding that she had not made reasonable efforts or reasonable progress but asked for testimony from the caseworker. Sabra England, a caseworker with Lutheran Child and Family Services (LCFS), testified that she was filling in for the family's regular caseworker, who had left the agency, and for their supervisor, who was on vacation. Her only familiarity with the case came from reading the supervisor's report. According to England, respondent had been visiting with the children and had completed a substance abuse assessment, but not yet followed any of its recommendations. Nor had she completed a domestic violence assessment. England did not know when respondent had last been drug tested.

¶ 9    After additional case reviews found that respondent was not completing drug tests or engaging in services, the State, on January 26, 2024, filed a petition to terminate her parental rights. The State alleged that she was unfit for failing to maintain a reasonable degree of interest, concern, or responsibility for the children's welfare; failing to protect them from conditions within their environment injurious to their welfare; failing to make reasonable efforts, from July 12, 2022, to April 12, 2023, and from April 12, 2023, to January 12, 2024, to correct the conditions that brought them into care; and failing to make substantial progress toward their return home.

¶ 10   A permanency report documents that respondent failed to appear for four of eight scheduled tests, had one invalid result, and had tested positive for amphetamines and methamphetamine on the remaining three test dates. Her visits with the children had become sporadic and she was still not engaged in other services.

¶ 11    At the fitness hearing, caseworker Kaitlyn Allen testified that she had been assigned to the case on August 31, 2023. She had reviewed the case file to familiarize herself with developments prior to that time. That review revealed that respondent's service plans directed her to complete a substance abuse assessment and recommended treatment, complete a mental health assessment and treatment, complete a psychiatric evaluation, engage in parenting classes, obtain stable housing, and take drug tests as requested. However, she had not completed any of those tasks. Allen noted that respondent had failed to appear for some random drug tests, and when she was tested, the results were positive. Respondent did not raise a hearsay objection to Allen's testimony.

¶ 12    Allen further testified that, at the time of the fitness hearing, respondent was in the Wabash County jail, so she had not been visiting the children. Before that, she visited regularly. She told Allen that she was engaged in substance abuse treatment through Lionrock, but Allen could not locate any contact information for that program. Allen had referred respondent for counseling at Egyptian Mental Health. However, respondent preferred to do her treatment through a program called Affect. Respondent never answered a request for information about that program.

¶ 13    The court took judicial notice of Wabash County case No. 23-CF-21, in which respondent was charged with criminal offenses, including bond conditions for those charges, and the subsequent revocation of her pretrial release.

¶ 14    Respondent testified that, until she was taken into custody on March 11, 2024, she was engaged in drug counseling though an online app called Affect, which included daily "challenges" and group activities. She had also contacted some residential treatment programs and had found an available bed at Gateway. She admitted that her bond conditions required her to attend two support groups per week, so her interest in these programs was not completely voluntary. She had also participated in some online support groups. She acknowledged that Egyptian Mental Health

had recommended that she engage in counseling. However, she did not pursue counseling through Egyptian, as she had an outstanding Wabash County arrest warrant, so she tried to avoid that county. She did, however, put more effort into online groups during that time.

¶ 15    Respondent described her preincarceration visits with the children as "good," but she was limited in what she could do with the children in one hour per week. She sometimes brought activities to do with the children, but mostly they spent time playing or watching television.

¶ 16    Respondent explained that she lived with her boyfriend, Caleb Goodwin. She became involved with him a month or two after his release from prison. She later learned he had been incarcerated for a methamphetamine conviction. She claimed that she did an interview with LCFS about a parenting course but was "denied access." She also claimed that, contrary to the reports, she had obtained a psychiatric evaluation but was unable to produce any documentation of it.

¶ 17    The trial court found respondent unfit for a lack of reasonable efforts and lack of substantial progress. The court found that the Affect app she relied on for substance abuse treatment was not sufficient to replace group meetings, treatment, or counseling, nor was it evidently effective as she continued to miss drug tests, and test positive when she did test. Additionally, she continued to incur criminal charges.

¶ 18    A best-interests report showed that respondent had not engaged in any other services since the last report but had become more difficult to monitor as she traveled with her paramour, and frequently changed her phone number. The children were reported to be bonded to their caregivers, up to date on their medical needs, and were doing well in school. A second such report noted that respondent had visited with the children while in jail, although the visits were limited by jail policy to 20 minutes each.

¶ 19 At the best-interests hearing, Mackenzie Adams, the children's foster mother, testified that she is respondent's half-sister. She lived with her husband, Hunter, and the children. Adams's relationship with the children predated DCFS's placement with her. Before that, she often picked them up from respondent, and they would not have been bathed and had food caked in their hair or on their bodies. Adams knew that respondent had substance-abuse issues and had no doubt that respondent and the children loved each other.

¶ 20 Soren P. attended Allendale school, where he had just completed first grade. He had attended two years of pre-K and kindergarten at the same school, so he was well-acquainted with it. Should he stay with Mackenzie, he would remain in that school. Zoey P. also attended Allendale school, where she had completed two years of pre-K and kindergarten. Both children were comfortable in her home and affectionate with Adams and her husband. She believed that her family could continue to provide the children with anything they may need as they grow up. In her opinion, staying in her home is in the best interests of both children. Hunter Adams testified similarly.

¶ 21 Respondent testified that she was serving a three-year sentence as the result of pleading guilty to methamphetamine charges. She had never had drug treatment other than taking online classes but wanted to engage in such treatment. She had agreed to do so while incarcerated as part of her plea agreement. She loved her children very much, and did not believe it was in their best interest to terminate her parental rights. She believed she should be given a chance to prove she could parent her children after her release.

¶ 22 Noting that respondent could have gone to drug treatment at any time in the two years after her children were taken into protective custody and before she was incarcerated but had not done

so, the court found it was in the children's best interests that respondent's parental rights be terminated. Respondent timely appealed.

¶ 23                                    ANALYSIS

¶ 24    As noted, respondent's appellate counsel concludes that there is no reasonably meritorious argument that the court erred by finding respondent unfit and terminating her parental rights. We agree.

¶ 25    A proceeding to terminate a party's parental rights under the Juvenile Court Act of 1987 (705 ILCS 405/1-1 *et seq.* (West 2022)) occurs in two stages. *In re Deandre D.*, 405 Ill. App. 3d 945, 952 (2010). First, the State must establish that the parent is "unfit to have a child" under one or more of the grounds in the Adoption Act. *In re D.T.*, 212 Ill. 2d 347, 352 (2004); see 750 ILCS 50/1(D) (West 2022). At the unfitness hearing, the State bears the burden of proving, by clear and convincing evidence, that the parent is unfit to have a child. See *In re D.W.*, 214 Ill. 2d 289, 315 (2005).

¶ 26    Section 1(D) of the Adoption Act lists several bases for a finding of parental unfitness including, as relevant here:

> "(m) Failure by a parent (i) to make reasonable efforts to correct the conditions that were the basis for the removal of the child from the parent ***, or (ii) to make reasonable progress toward the return of the child to the parent during any 9-month period following the adjudication of neglected or abused minor ***." 750 ILCS 50/1(D)(m) (West 2022).

*In re Jacien B.*, 341 Ill. App. 3d 876, 881 (2003).

¶ 27    Here, the evidence supported the court's findings that respondent failed to make reasonable efforts or reasonable progress. Despite the significance of respondent's methamphetamine usage to the case, she never passed a random drug test. She never engaged in inpatient treatment, relying

instead on a telephone app. As the court noted, this was obviously ineffective as she continued to miss or fail drug tests and to incur additional criminal charges related to her methamphetamine use. At the time of the best-interests hearing, she was incarcerated as a result of her guilty plea to one such charge. In more than two years, respondent did not participate in any substantive services while continuing to test positive for methamphetamine, resulting in her incarceration. Based on this evidence, the court did not err in finding respondent unfit.

¶ 28    Counsel further concludes that there is no reasonably meritorious claim to challenge the court's finding that terminating respondent's parental rights was in the children's best interests. Once a parent is found unfit, the trial court moves on to the second stage of termination proceedings, which involves a determination of whether it is in the minor's best interest to terminate parental rights. At this stage, the State must demonstrate, by a preponderance of the evidence, that the termination is in the minor's best interest. *In re D.T.*, 212 Ill. 2d at 366-67.

¶ 29    Here, the children were placed with respondent's half-sister and her husband. At the time of termination, the children were five and six years old and had been officially placed in that foster home for nearly three years. Both foster parents testified that the children had adjusted to their school and community and were bonded with their foster parents.

¶ 30    By contrast, respondent was incarcerated at the time of the hearing. She wanted a chance to be able to parent the children after her release, but in more than two years prior to her incarceration, she had done little to make that happen. Thus, the court's finding that termination was in the children's best interests was supported by the evidence.

¶ 31    Counsel further concludes that there is no meritorious argument that the court erred by considering hearsay at the termination hearing, regarding the testimony of caseworker Allen. At the time of that hearing, Allen had been the caseworker for only a few months and familiarized

herself with the case by reading reports. Thus, much of her testimony about the early history of the case was purportedly hearsay, which is generally not admissible at fitness hearings. 705 ILCS 405/2-18(4)(a) (West 2022); see also *In re J.G.*, 298 Ill. App. 3d 617, 629 (1998). However, respondent failed to object. See *In re Madison H.*, 215 Ill. 2d 364, 378-79 (2005) (failure to raise an issue in the trial court forfeits it on review).

¶ 32    Further, Allen's testimony was consistent with the reports the court took judicial notice of, also without objection. See *In re M.D.*, 2022 IL App (4th) 210288, ¶ 102 (hearsay admitted without objection can be given its natural probative weight). Finally, as counsel notes, respondent's own testimony established her failure to participate in services. Thus, any error in considering hearsay evidence was harmless.

¶ 33                                        CONCLUSION

¶ 34    As this appeal presents no issue of arguable merit, we grant counsel leave to withdraw and affirm the circuit court's judgment.


¶ 35    Motion granted; judgment affirmed.