**NOTICE:** This order was filed under Supreme Court Rule 23 and is not precedent except in the limited circumstances allowed under Rule 23(e)(1).

2021 IL App (3d) 210170-U

Order filed September 21, 2021

---

IN THE

APPELLATE COURT OF ILLINOIS

THIRD DISTRICT

2021

| | | |
|---|---|---|
| *In re* A.C., a Minor | ) | Appeal from the Circuit Court |
| | ) | of the 9th Judicial Circuit, |
| (The People of the State of Illinois, | ) | Hancock County, Illinois |
| | ) | |
| Petitioner-Appellee, | ) | Appeal No. 3-21-0170 |
| | ) | Circuit No. 17-JA-5 |
| v. | ) | |
| | ) | |
| Suzanne C., | ) | The Honorable |
| | ) | Rodney G. Clark, |
| Respondent-Appellant). | ) | Judge, Presiding |

---

| | | |
|---|---|---|
| *In re* R.M.F., a Minor | ) | Appeal from the Circuit Court |
| | ) | of the 9th Judicial Circuit, |
| (The People of the State of Illinois, | ) | Hancock County, Illinois |
| | ) | |
| Petitioner-Appellee, | ) | Appeal No. 3-21-0171 |
| | ) | Circuit No. 17-JA-6 |
| v. | ) | |
| | ) | |
| Suzanne C., | ) | The Honorable |
| | ) | Rodney G. Clark, |
| Respondent-Appellant). | ) | Judge, Presiding |

---

| | | |
|---|---|---|
| *In re* D.P.H., a Minor | ) | Appeal from the Circuit Court |
| | ) | of the 9th Judicial Circuit, |
| (The People of the State of Illinois, | ) | Hancock County, Illinois |
| | ) | |
| Petitioner-Appellee, | ) | Appeal No. 3-21-0172 |
| | ) | Circuit No. 17-JA-7 |
| v. | ) | |
| | ) | The Honorable |
| Suzanne C., | ) | Rodney G. Clark, |
| Respondent-Appellant). | ) | Judge, Presiding. |

_____

JUSTICE LYTTON delivered the judgment of the court.
Presiding Justice McDade and Justice Schmidt concurred in the judgment.

_____

**ORDER**

¶ 1   *Held*: (1) Trial court finding mother unfit for failure to make reasonable progress toward the return of her children in a nine-month period was not against the manifest weight of the evidence where mother was involved in several domestic violence incidents during the relevant period; and (2) mother received effective assistance at fitness hearing despite counsel's failure to call her as a witness where evidence showed mother remained involved with abusive father through majority of nine-month period.

¶ 2   Respondent Suzanne C. is the mother of minors A.C., R.M.F. and D.P.H. In April 2017, the State filed petitions alleging that the minors were neglected in that their environment was injurious to their welfare due to domestic violence between respondent and her paramour. Following hearings, the trial court found the minors neglected and respondent unfit. Two years later, the State filed petitions to terminate respondent's parental rights. The trial court found respondent unfit and terminated her parental rights. Respondent appeals, arguing that (1) the trial court's unfitness finding was not supported by the evidence, and (2) she was denied effective assistance of counsel at the fitness hearing. We affirm.

¶ 3                                    BACKGROUND

¶ 4　　　　On April 18, 2017, the State filed Petitions for Adjudication of Wardship alleging that A.C., R.M.F. and D.P.H. were neglected minors in that their environment was injurious to their welfare based on the following: (1) on December 24, 2016, respondent was arrested for domestic battery against her paramour, Christian W., and pled guilty to battery; (2) respondent was indicated by the Department of Children and Family Services (DCFS) for "substantial risk of physical injury/environment injurious to health and welfare for incidents of domestic violence;" (3) on March 18, 2017, respondent reported to her grandmother and grandfather that Christian W. hit her; (4) between March 1, 2017 and March 18, 2017, respondent reported to her mother, Chrissy C., that Christian W. choked her; (5) Chrissy C. "found stuff thrown all over [respondent's] apartment and observed where Christian W*** had put his fist through the wall in the hallway again;" (6) Hancock County Sheriff Deputy Steve Shoopman reported that respondent and Christian W. have "ongoing physical domestic situations in the home with the children frequently being present;" (7) on March 18, 2017, respondent reported to Shoopman that Christian W. punched her "multiple times in the ribs" but she refused to press charges; and (8) respondent refused to engage in intact services through DCFS.

¶ 5　　　　In June 2017, respondent married Christian W. On August 15, 2017, respondent filed an admission as to all the allegations set forth in the State's petitions. On the same date, an adjudicatory hearing was held. The trial court entered an order finding all three minors neglected due to an injurious environment because of "domestic violence in the home" and respondent's "refusal to engage in intact services." On October 6, 2017, a dispositional hearing was held. At the hearing, the trial court (1) ruled it was in the best interests of the minors to make them wards of the Court, (2) found respondent unfit because of ongoing domestic violence and unsatisfactory participation in services, and (3) placed custody and guardianship of the minors with DCFS.

¶ 6        At the first permanency review hearing on May 22, 2018, the goal was for the children to return home within 12 months. On March 26, 2019, the court ruled that respondent had "not made substantial/reasonable progress" toward that goal. On June 11, 2019, the court entered an order finding that respondent made "reasonable efforts since 3/19/19 but not substantial progress" toward the goal of the children returning home. On September 10, 2019, the court found respondent "has not made reasonable and substantial progress toward returning the minor[s] home" and changed the goal to "substitute care pending termination of parental rights."

¶ 7        At permanency review hearings on March 9, 2020, and July 21, 2020, the court ruled that respondent had not made "reasonable and substantial progress" or "reasonable efforts" toward the goal of the minors returning home. On July 23, 2020, the State filed petitions to terminate respondent's parental rights of A.C., R.M.F. and D.P.H., alleging that respondent failed to make reasonable progress toward the return of the children during the nine-month period of October 20, 2019, to July 20, 2020.

¶ 8        A hearing on the fitness portion of the State's petition was held on December 4, 2020. Mariah Terstegge, a child welfare specialist, testified that she was the caseworker for A.C., R.M.F. and D.P.H. from May 14, 2018, to December 31, 2019. An integrated assessment and service plan were created for respondent. Respondent's initial service plan required respondent to complete tasks to "address overall level of functioning; parenting; domestic violence; [and] mental health." In October 2019, Terstegge added two additional tasks: housing and employment. Terstegge reviewed the service plans with respondent.

¶ 9        Terstegge evaluated and rated respondent on her completion of tasks contained in the October 10, 2019 service plan, which covered April to October 2019. Terstegge rated respondent "unsatisfactory" for "overall level of functioning" and "domestic violence" because respondent

4

was involved in a "domestic violence incident" on September 8, 2019. Terstegge rated respondent "satisfactory" for "parenting" and "housing and employment." Terstegge's overall rating for respondent was "unsatisfactory" because of respondent's continued involvement with Christian W. and the September 8, 2019 incident.

¶ 10   Terstegge agreed that respondent had successfully completed parenting classes, mental health programs and domestic violence classes as of October 10, 2019. Terstegge did not know if respondent committed domestic violence against Christian W. on September 8, 2019, but knew Christian W. was "part of that event." Terstegge testified that while respondent "was attending some services" from April to October 2019, respondent failed to mitigate the problems that caused her children to come into DCFS care.

¶ 11   Lisa Brandon, a child welfare specialist, testified that she is currently the caseworker for A.C., R.M.F. and D.P.H. and has been since January 1, 2020. DCFS became involved with respondent and her children in May 2017. In October 2017, after respondent failed to cooperate and complete intact services, DCFS took custody of the children.

¶ 12   In December 2019, respondent pled guilty to aggravated battery arising out of the September 8, 2019 incident. In January 2020, respondent had a child with Christian W. The child lives with respondent.

¶ 13   The tasks listed in respondent's service plan for October 2019 to April 2020 were "overall functioning regarding her mental health, domestic violence services, parenting, cooperation, housing and employment." Brandon rated respondent's "overall level of functioning" as "unsatisfactory" because respondent was "not engaged in services consistently." Respondent stopped participating in counseling sometime after October 13, 2019, but reengaged in February 2020. Brandon rated respondent's "cooperation" and "parenting" as "satisfactory."

¶ 14    Brandon rated respondent as "unsatisfactory" for "domestic violence" because of her recent aggravated battery conviction and "unsatisfactory" for "housing and employment" because she did not live in her own home and failed to maintain consistent employment. Brandon rated respondent's progress with the overall service plan as "unsatisfactory" because respondent "still had yet to address her relationship and the domestic violence that led to the children being placed in care, she hadn't maintained any level of home to ensure appropriate care for the children, and she had the conviction of the aggravated battery."

¶ 15    The same tasks listed in respondent's October 2019 to April 2020 service plan were contained in the next service plan, which covered April to October 2020. Brandon rated respondent's "overall level of functioning" as "unsatisfactory" because respondent (1) maintained a relationship with Christian W., (2) was involved in several reported incidents of domestic violence with Christian W., and (3) did not mention the incidents of domestic violence to her service providers. Brandon rated respondent's "parenting" as "unsatisfactory" because respondent did "not demonstrate an understanding of how her choices and behaviors impact her children" based on her continued relationship with Christian W. and repeated incidents of domestic violence.

¶ 16    Brandon contacted the Keokuk Police Department in June 2020. The department reported that calls were made to police by respondent or Christian W. on May 9, 2020, May 21, 2020, May 22, 2020 (three separate times), May 23, 2020, and June 7, 2020. On May 22, 2020, respondent told police that Christian W. threw a knife at her and used the knife to cut a tire on her vehicle. Later that day, respondent called police and reported that she cut the tires on Christian W.'s vehicle.

¶ 17    As a result of these domestic violence incidents and respondent's failure to report them to Brandon or respondent's service providers, Brandon rated respondent's progress in "domestic

violence" as "unsatisfactory." Brandon also rated respondent's "housing and employment" as "unsatisfactory" because respondent had not maintained her own home and domestic violence was occurring at her home. Brandon agreed that respondent had "maintained a level of employment" at "a couple different jobs." Brandon's overall rating for respondent was "unsatisfactory." By the end of the review period, the permanency goal was changed to termination of parental rights.

¶ 18        Brandon testified that based on her experience as a caseworker, respondent failed to make reasonable progress toward the goal of her children returning home during the relevant nine-month period because respondent failed to (1) actively participate in services, (2) provide information to service providers, and (3) eliminate domestic violence from her life. Brandon agreed that her primary reason for rating respondent "unsatisfactory" was respondent's ongoing relationship with Christian W.

¶ 19        Respondent presented no testimony or evidence at the fitness portion of the hearing. On December 15, 2020, the trial court issued a written decision finding respondent unfit for failing to make reasonable progress toward the return of her children during the relevant nine-month period. The court acknowledged that respondent completed some service plan tasks but "failed to implement what she learned from completing the task[s]." Specifically, respondent had not changed the conditions that led to her children being taken into DCFS care because she was still in relationship with Christian W.

¶ 20        A best interest hearing was held in April 2021. Respondent's counsel entered into evidence a letter from respondent's current counselor, which stated that respondent had been consistently attending counseling since February 3, 2020. When questioned about the letter, Brandon testified that she was not as concerned about respondent's attendance at counseling as she was about her

"progress" in counseling because respondent failed to disclose certain information to her counselor, especially with respect to her relationship with Christian W.

¶ 21    Respondent testified that she has lived in a two-bedroom home with her aunt in Keokuk, Iowa for the last year. She testified that she worked continuously from October 20, 2019, to July 20, 2020, at Titan Wheel, KPF and ECS Truckwash. She admitted that she went from "job to job" but said she always had a job. Respondent testified she has been attending counseling regularly since October 20, 2019, and that she talks about domestic violence with her counselor. However, on cross examination, respondent admitted that she did not tell her counselor about the incident on May 22, 2019, when Christian W. used a knife to slash her tire. She agreed it was important for her counselor to know about that incident.

¶ 22    Respondent testified that she last saw Christian W. approximately a year earlier. He is now married to someone else. A picture of respondent and Christian W. was posted on respondent's Facebook page the day before the best interest hearing. Respondent said the picture was "old" and denied posting it. Respondent is still on probation for her 2019 aggravated battery, which she committed against Christian W.'s current wife. Respondent testified that she is compliant with her probation. At the conclusion of the best interest hearing, the trial court found the State met its burden of proving that it was in the best interests of A.C., R.M.F. and D.P.H. to terminate respondent's parental rights.

¶ 23                                ANALYSIS

¶ 24                               I. Fitness

¶ 25    Respondent first argues that the trial court's unfitness finding was against the manifest weight of the evidence because she completed many of the tasks required in her service plans.

¶ 26    Under the Juvenile Court Act of 1987 (Act), the involuntary termination of parental rights involves a two-step process: (1) the State must prove the parent is unfit as defined in section 1D of the Adoption Act (750 ILCS 50/1D (West 2020)); and (2) the court determines whether it is in the best interest of the minor to terminate parental rights (705 ILCS 405/2-29(2) (West 2020)).

¶ 27    The Adoption Act lists various grounds under which a parent may be found unfit. 750 ILCS 50/1D (West 2020). Section 1D(m) states that the grounds for unfitness include "[f]ailure by a parent *** to make reasonable progress toward the return of the child to the parent during any 9-month period following the adjudication of neglected or abused minor." 750 ILCS 50/1(D)(m)(ii) (West 2020). If a service plan has been established, "'failure to make reasonable progress toward the return of the child to the parent' includes the parent's failure to substantially fulfill his or her obligations under the service plan and correct the conditions that brought the child into care." *Id.*

¶ 28    The State must prove parental unfitness by clear and convincing evidence. *In re D.F.*, 332 Ill. App. 3d 112, 124 (2002). A trial court's finding of unfitness is entitled to deference and will be disturbed only if it is against the manifest weight of the evidence. *Id.* A finding is against the manifest weight of the evidence only when the opposite conclusion is clearly evident. *Id.*

¶ 29    Reasonable progress is an objective standard that focuses on the steps the parent has taken toward the goal of reunification. *Id.* at 125. The parent's progress is measured against (1) the conditions that brought the child into care, and (2) other conditions subsequently discovered that prevent the child from returning home. *In re Ta. T.*, 2021 IL App (4th) 200658, ¶ 55. "Reasonable progress exists when the trial court can conclude that the progress being made by a parent to comply with directives is sufficiently demonstrable and of such a quality that the trial court will be able to order the minor returned to parental custody in the near future." *In re K.P.*, 2020 IL App (3d) 190709, ¶ 36.

9

¶ 30        "'[T]here is a difference between effort and progress.'" *In re R.L.*, 352 Ill. App. 3d 985, 999 (2004). While a parent shows effort by engaging in services, such as parenting and domestic violence classes and counseling, a parent fails to make reasonable progress if she does not implement the skills taught. See *id.*; see also *In re Janine M.A.*, 342 Ill. App. 3d 1041, 1051 (2003) ("while respondent attended various counseling sessions and parenting classes, the evidence indicated she did not internalize and demonstrate the lessons she learned there"). "There [is] a significant difference between going through the motions, checking off the boxes, mechanically doing what is asked of the parent, and actually changing the circumstances that brought the children into care." *In re Ta. T.*, 2021 IL App (4th) 200658, ¶ 56. "The point of requiring parents to attend classes and engage in services *** is so parents *apply* what they learn *** such that the court can be confident that the children will be safe in their care." (Emphasis in original.) *Id.*

¶ 31        A parent fails to make reasonable progress if she does not substantially correct the conditions that brought her children into care. See 750 ILCS 50/1(D)(m)(ii) (West 2020); *In re D.T.*, 2017 IL App (3d) 170120, ¶ 17. If the primary reason the respondent's children were adjudicated neglected was their exposure to domestic violence, the most relevant measure of the respondent's progress is her advancement on issues related to domestic violence. See *In re K.H.*, 346 Ill. App. 3d 443, 452 (2004). Where the respondent fails to sufficiently address domestic violence during the relevant nine-month period, the trial court's finding that the respondent failed to make reasonable progress is not against the manifest weight of the evidence. See *id.* at 453-55; see also *In re H.S.*, 2016 IL App (1st) 161589, ¶¶ 25-26 (evidence supported trial court's finding that father failed to make reasonable progress where he maintained relationship "marred by domestic violence"). This is true even if the respondent completed all or most of the tasks required under the relevant service plans. See *Ta. T.*, 2021 IL App (4th) 200658, ¶¶ 54-57 (father who "fully

10

complied with the service plan" failed to make reasonable progress because he continued to be involved in domestic violence incidents); *R.L.*, 352 Ill. App. 3d at 999 (mother who attended parenting classes and counseling did not demonstrate reasonable progress because she "continued to surround herself with violent men" and remained in "an unhealthy and unstable relationship with her paramour"); *In re M.C.*, 197 Ill. App. 3d 802, 806 (1990) (mother who attended parenting class and counseling failed to make reasonable progress because she refused to cut ties with abusive father).

¶ 32    Here, the evidence showed that prior to and during the relevant nine-month period, respondent completed some services, including parenting classes, domestic violence classes and regular visitation with her children. However, she did not participate in counseling for the entire period and did not maintain her own home or steady employment throughout the entire nine months. More importantly, both caseworkers rated respondent's overall progress during the period as "unsatisfactory" because respondent continued to maintain a relationship with Christian W., which was fraught with incidents of domestic violence and led to respondent's conviction for aggravated battery during the relevant nine-month period.

¶ 33    One of the most important considerations in determining if a parent has made "reasonable progress" is whether the parent has corrected the conditions that led her children to be placed in DCFS care. See 750 ILCS 50/1(D)(m)(ii) (West 2020); *Ta. T.*, 2021 IL App (4th) 200658, ¶ 55; *D.T.*, 2017 IL App (3d) 170120, ¶ 17. Respondent's children were removed from her care primarily because of domestic violence in her home. Nevertheless, during the relevant nine-month period, respondent maintained a relationship with Christian W., resulting in at least seven calls to police for incidents of domestic violence.

¶ 34    Both caseworkers testified that while respondent completed some tasks required by the service plans, she failed to reduce or eliminate domestic violence in her life. The trial court agreed that respondent completed some service plan tasks but "failed to implement what she learned from completing the task[s]" because she remained in a volatile relationship with Christian W. Based on the evidence presented, the trial court's finding that respondent was unfit for failure to make reasonable progress toward the return of her children during the relevant nine-month period was not against the weight of the evidence. See *H.S.*, 2016 IL App (1st) 161589, ¶¶ 25-26 *Ta. T.*, 2021 IL App (4th) 200658, ¶¶ 54, 57; *R.L.*, 352 Ill. App. 3d at 999; *K.H.*, 346 Ill. App. 3d at 454-55; *Janine M.A.*, 342 Ill. App. 3d at 1051-52; *M.C.*, 197 Ill. App. 3d at 806.

¶ 35                                    II. Effective Assistance of Counsel

¶ 36    Respondent argues that she was denied effective assistance at the fitness hearing because her counsel failed to call her as a witness. She claims that if she had testified, like she did at the best interest hearing, she could have refuted the allegations of unfitness against her.

¶ 37    Section 1-5(1) of the Act provides that minors and their parents have the right to be represented by counsel. 705 ILCS 405/1-5(1) (West 2020); *In re Ch. W.,* 399 Ill. App. 3d 825, 828 (2010). While the right to counsel under the Act is statutory and not constitutional, Illinois courts apply the standard in criminal cases created by *Strickland v. Washington,* 466 U.S. 668 (1984), to gauge the effectiveness of counsel in juvenile proceedings. *Id*. Under the two-prong test set forth in *Strickland,* the respondent must show that (1) "counsel's representation fell below an objective standard of reasonableness," and (2) she was prejudiced such that "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." 466 U.S. at 688, 694.

12

¶ 38        To prevail on her claim of ineffective assistance, respondent must satisfy both prongs of the *Strickland* test. See *In re K.O.,* 336 Ill. App. 3d 98, 111 (2002). If we can dispose of respondent's ineffective assistance claim because she suffered no prejudice, we need not address whether her counsel's performance was objectively reasonable. See *id.*

¶ 39        Here, at the fitness hearing, the trial court heard testimony from two caseworkers about respondent's progress during the relevant nine-month period. Both caseworkers testified that while respondent completed some services prior to and during the relevant period, she failed to participate in counseling during the entire period and did not maintain her own job or stable employment. Both caseworkers rated respondent's overall progress during the relevant nine-month period as "unsatisfactory" because although respondent completed some of the tasks required of her, she failed to correct the condition that caused her children to come into DCFS custody by maintaining a relationship with Christian W.

¶ 40        Respondent contends that she could have provided testimony at the fitness hearing similar to her testimony at the best interest hearing to refute the allegations of unfitness. We disagree.

¶ 41        At the best interest hearing, respondent testified that she participated in counseling during the entire nine-month period. However, a letter from her counselor contradicted that testimony. In his letter, respondent's counselor stated that respondent started counseling in February 2020, which was four months into the relevant nine-month period. Further, as Brandon explained at the best interest hearing, respondent's attendance at counseling was not as concerning as respondent's lack of progress in counseling and her refusal to honestly communicate with her counselor. While respondent testified that she discussed domestic violence with her counselor, she admitted that she did not tell him about incidents of domestic violence that occurred during the relevant nine-month

13

period that would have been important for him to know. Thus, respondent could not refute the evidence showing that she failed to fully engage in counseling during the entire nine-month period.

¶ 42    Respondent also could not refute that she failed to maintain her own home and stable employment during the relevant nine-month period. At the best interest hearing, respondent testified that she has lived with her aunt for the past year, which was the same information provided at the fitness hearing. Additionally, respondent admitted that during the nine-month period she moved from "job to job" several times.

¶ 43    Finally, and most importantly, respondent could not have presented evidence showing that she was not in a violent relationship with Christian W. during the relevant time period. Respondent testified at the best interest hearing in April 2021 that she had not seen or communicated with Christian W. in a year. However, that testimony was directly contradicted by evidence presented by Brandon at the fitness hearing, showing numerous phone calls to the Keokuk Police Department involving domestic violence incidents between respondent and Christian W. in May and June 2021.

¶ 44    The evidence showed that respondent remained in a relationship with Christian W. that was plagued by domestic violence for eight out of the nine months of the relevant period. Because respondent's testimony at the best interest hearing about her contact with Christian W. was directly contradicted, providing that testimony at the fitness hearing would not have been helpful to respondent. To the contrary, such testimony would only have highlighted respondent's continued dishonesty about her relationship with Christian W.

¶ 45    Respondent failed to establish that her testimony at the fitness hearing would have led the court to find her fit. Thus, her ineffective assistance claim fails. See *K.O.,* 336 Ill. App. 3d at 111.

¶ 46                                    CONCLUSION

14

¶ 47    The judgment of the circuit court of Hancock County is affirmed.

¶ 48    Affirmed.